(83 South. 787)

No. 22124.

PENICK & FORD, Limited, v. C. LAGARDE
CO., Limited.

(Dec. 1, 1919. Rehearing Denied Feb. 2, 1920.)

*(Syllabus by Editorial Staff.)*

1. SALES ⊜⟋411 — PETITION IN ACTION FOR
BREACH OF SALE CONTRACT STATED CAUSE OF
ACTION.

A petition alleging a sale and purchase,
through an agent duly authorized, of 100,000
gallons of blackstrap molasses at 6 cents per
gallon, f. o. b. factory, to be delivered by or
before October 1st, and the failure of defend-
ant to comply with its obligation to deliver
thereunder, states a cause of action.

2. SALES ⊜⟋52(5)—EVIDENCE SUFFICIENT TO
SHOW EXECUTION OF SALES CONTRACT.

In an action for breach of contract to de-
liver 100,000 gallons of blackstrap molasses
purchased through an agent, evidence *held* to
support a finding that the sale contract was
in fact made, and that it was made by defend-
ant's president.

3. GAMING ⊜⟋12—SALE OF MOLASSES BEFORE
MANUFACTURE FOR SUBSEQUENT DELIVERY IS
NOT IMMORAL OR ILLEGAL.

The custom of sugar planters to sell their
molasses in advance of its being made, early
in the year, for delivery through the summer
and fall, is not reprehensible, either in law or
morals.

4. SALES ⊜⟋172 — FAILURE TO MANUFACTURE
QUANTITY OF MOLASSES SOLD NOT EXCUSE
FOR BREACH OF CONTRACT.

In action for failure to deliver a quantity
of molasses to be manufactured, that defend-
ant did not make enough molasses to fill his
contract is not an excuse for failure to per-
form; the written terms of the sale being un-
conditional and for a fixed quantity at a definite
price, and it being the seller's duty to see that
the purchaser understood any conditions which
seller wished to impose.

5. CORPORATIONS ⊜⟋518(1) — EVIDENCE OF
WANT OF AUTHORITY TO MAKE CONTRACT IN-
ADMISSIBLE WHERE NOT PLEADED.

In an action for failure to deliver a quanti-
ty of molasses sold, evidence that defendant's
president was without authority to make the
contract on behalf of defendant was properly
excluded, where such defense was not pleaded.

6. CORPORATIONS ⊜⟋425(4)—PREVIOUS DEAL-
INGS MAY ESTOP DEFENDANT FROM QUES-
TIONING AUTHORITY OF OFFICERS OR BRO-
KERS TO MAKE SALES CONTRACT.

In an action for failure to deliver molasses
sold, where defendant's president had on nu-
merous occasions dealt with its broker in sim-
ilar matters, and had held such broker out as
authorized to handle its products, defendant
cannot question the authority or capacity of ei-
ther the broker or its own president.

Appeal from Twentieth Judicial District
Court, Parish of Lafourche; W. E. Howell,
Judge.

Action by Penick & Ford, Limited, against
the C. Lagarde Company, Limited. Judg-
ment for plaintiff, and defendant appeals.
Affirmed.

Beattie & Beattie, of Thibodaux, for ap-
pellant.

Milling, Godchaux, Saal & Milling, of New
Orleans, for appellee.

DAWKINS, J. Plaintiff is a dealer in su-
gars and molasses in the city of New Orleans,
and alleges that on or about the 23d day of
June, 1915, it bought of defendant 100,000
gallons of "blackstrap" molasses, to be deliv-
ered by or before October 1st of the same
year, at 6 cents per gallon, f. o. b. defend-
ant's plantation factory; that defendant fail-
ed to make delivery according to contract;
and that after repeated demand it, plaintiff,
was compelled, on December 31, 1915, to en-
ter the open market and purchase from other
persons said quantity of molasses to fill its
own contracts made with other customers up-
on the faith of its agreement with defendant.
Plaintiff further alleges that it paid for the
molasses so purchaseed in open market 14¾
cents per gallon, or 8¾ cents more than the
price at which it had purchased from de-
fendant; and hence demands the difference
in price at which it purchased the 100,000
gallons of $8,750, as the damages sustained
by it on the transaction.

Defendant first excepted to the petition on the ground that it disclosed no cause of action, and, further, that it did not comply with the pleading and practice act (Act 157 of 1912, as amended by Act 300 of 1914).

[1] The petition alleges a sale and purchase, through an agent duly authorized, of a definite thing for a fixed price, and the failure of defendant to comply with its obligation to deliver thereunder. It therefore states a cause of action. The petition also sets out the material allegations of fact in separately numbered articles or paragraphs, which fairly and reasonably comply with the provisions of Act 300 of 1914. Hence the exception was properly overruled.

Defendant then denied the contract and prayed for trial by jury.

After a trial extending over some days and producing a somewhat voluminous record, there was a verdict and judgment in favor of plaintiff for the amount claimed, and defendant has appealed.

### Opinion.

The most serious question presented by this record, is one of fact, and that is as to whether or not the defendant gave its consent to the making of the contract. Both the jury and the judge below were evidently convinced that it did, and in order for us to reverse that finding we must be convinced that the same was clearly erroneous.

Plaintiff contends that it bought through J. J. A'Quin, a broker on the Sugar Exchange, from Leon Godchaux Company, Limited, as the agent of defendant specially authorized to make the sale on the date of the purchase. In support of this contention it has offered the testimony of Charles Godchaux, president of the Godchaux Company, and who swears that on June 23, 1915, the alleged date of sale, Dr. A. J. Price, president of defendant company, called him, Godchaux, over the long distance phone from Thibodeaux, La., and

146 La.—17

asked about the price of blackstrap molasses; that he told Price he thought he could get 6 cents per gallon; that in the same conversation he informed Price that he had some days previously sold 200,000 gallons for the Lagarde Company to Bodenheimer & Co., along with molasses of the Godchaux Company, for 5 cents per gallon, and in as much as he, Price, had informed him, Godchaux, that the defendant would produce between 250,000 and 300,000 gallons of blackstrap, he, Godchaux, thought he could get 6 cents for the remaining 100,000 gallons; that Price requested that he see what could be done and call again over the phone; that one Salvant, who was manager of the molasses department of J. J. A'Quin, happened to be in the Godchaux Company's office at the moment of this conversation over the phone, and was thereupon requested by Godchaux to go upon the Sugar Exchange and see what could be had for 100,000 gallons of blackstrap molasses; that later Salvant returned and reported that he had obtained an offer of 6 cents per gallon from Penick & Ford, plaintiff herein; that he, Godchaux, then called up Price and informed him of the offer; and that Price then and there directed that he close the sale on the basis of the offer so made. Salvant corroborates the testimony of Godchaux, in so far as the latter's end of the two conversations over the phone is concerned, having been present on both occasions, but, of course, could not swear what had been said by Price. On the same day Godchaux & Co., through its said president, confirmed the sale to Penick & Ford by letter addressed to the defendant company, giving name of purchaser, amount, and price of molasses so sold.

The sale on the Sugar Exchange was fully established by the testimony of Salvant and of Murray; the latter acting on behalf of Penick & Ford.

Dr. Price admitted calling up the Godchaux Company in regard to the molasses

market, as detailed by Godchaux in regard to the first conversation, but denied that he had had a second one on the same day, or that he had authorized the sale. He also admitted receiving the letter referred to by Godchaux on the next day, June 24th, and in which the details of the sales, both to Bodenheimer & Co. and to Penick & Ford, were given, and that he never answered the letter or repudiated at any time thereafter the said action of Godchaux & Co. on behalf of defendant until this suit was filed. Messrs. Roger and Foret, stockholders and directors in defendant company, were sworn, and corroborated Dr. Price as to his end of the first conversation over the phone, but stated that they knew nothing of the second; that they had been called in by Price from their plantations to consider an offer from Bodenheimer & Co. for their blackstrap molasses, and were present in the defendant's office when it was decided to call up Godchaux, but that shortly thereafter they dispersed and returned to their homes.

The records of the Cumberland Telephone & Telegraph Company show that there were two conversations, as stated by Godchaux; the first one having been initiated by Price from Thibodeaux and the second by Godchaux from New Orleans.

The only explanation which Dr. Price offers for his failure to answer or repudiate the action of the Godchaux Company reported in the letter of June 23d was that Godchaux had told him over the phone that if the defendant did not make as much molasses as had been sold it would not have to account for the difference, and which, of itself, is somewhat contradictory of the idea that he did not consent to or authorize the sale.

[2, 3] We think the preponderance of the evidence is very much in favor of the sale having been made.

A number of other technical defenses are made, such as the want of authority in the Godchaux Company, under its charter, to act as a broker, and the absence of any legal right in the defendant corporation to engage in the business of speculating in the future market on the Sugar Exchange. However, defendant had, since 1913, sold its sugars and molasses through the Godchaux Company, as its broker, and continued to do so after the sale in this case, received the benefits thereof, and it would seem that the objection now raised comes rather late. The transaction seems to have been a bona fide one, in which delivery was contemplated by both sides according to the rules of the Sugar Exchange, and was therefore not speculative. The record shows that a large majority of the sugar planters sell their molasses in advance of its being made, early in the year, for delivery through the summer and fall, just as was done in this case, and we can seeing nothing reprehensible therein, either in law or morals.

Defendant partially carried out the contract of sale made by Godchaux & Co. to Bodenheimer & Co., above referred to, by shipping to them 94,000 gallons of their blackstrap molasses. The total amount produced from the crop of 1914 during the summer and fall of 1915 was approximately 157,000 gallons, which was admittedly less than defendant had expected, but it made a higher percentage of sugar from its syrup than it usually did, and this perhaps accounts for the shortage. Of this amount, it kept 63,000 gallons at the factory, 22,000 of which was used or reserved for stock feed, and some 38,000 gallons were carried over and sold with the next year's crop for 18 cents per gallon.

[4] Defendant, of course, did not make enough blackstrap molasses to fill both contracts, that is, with Bodenheimer & Co. and the plaintiff herein, by approximately 150,000 gallons. However, that was not the fault of the purchasers, and having made the contract the law holds the defendant to its fulfillment, or to the payment of the damages which its

failure produced, regardless of whether it made the quantity contracted or not, or of what its rights may be as against Godchaux & Co., if the latter really informed defendant that it would not have to deliver if the quantity sold were not made. The written terms of the sale reported to defendant were unconditional and of a fixed quantity for a definite price, and it was its duty to see that the purchaser understood any conditions which defendant wished to impose. 24 A. & E. Encyc. of Law, p. 1077; 2 Mechem on Sales, p. 800, § 938.

The record reasonably shows that the loss would not have been sustained if defendant had promptly repudiated the purported authority of Godchaux & Co., or if it had advised the parties concerned of its belief that it would not make the quantity of molasses sold and insisted upon attaching that condition to the agreement. It cannot be heard, after the loss has been sustained, and after it has received for more than a third the quantity of molasses sold to plaintiff three times the contract price, to say that it did not make the sale or that it did not produce the quantity of molasses covered by its contract.

[5, 6] Defendant attempted to show on the trial that Dr. Price was without authority to make the contract on behalf of defendant, but such evidence was properly excluded for the reason that no such defense was pleaded. In any event, with Dr. Price as the managing head of the defendant company, engaged in the manufacture and sale of sugar and molasses, and on numerous occasions prior to the present controversy, having dealt with the Godchaux Company in matters of this sort, and having held the latter out as its broker authorized to handle its products, we think it is now too late for the defendant to question the authority or capacity of either. Pitts v. Shubert, 11 La. 286, 30 Am.

Dec. 718; Flower v. Jones & Gilmore, 7 Mart. (N. S.) 140.

For the reasons assigned, the judgment appealed from is affirmed, at the cost of the appellant.