DAWKINS, J.
This record presents two consolidated cases for damages on account of the alleged violation, during different periods of time, of the contract quoted in the case between the parties hereto, reported in 135 La. 511, 65 South. 627. Plaintiff alleges that because of the failure of the defendant to deliver all of the hard wood and cypress timber covered by that agreement, at the rate of 10,000 feet per day, it has been damaged to the extent of some forty odd *297 thousand dollars, including profits on lumber, expenses of its mill, expenses in preparation of its case, attorney’s fees, etc., and it also demands $5,000 as punitive damages.
Defendant disclaimed liability, ashed for an accounting under the contract, and sued in reconvention for the sum of $2,935.51 as the amount which it claimed had been overpaid to plaintiff under the judgment of this court above referred to and reported in 135 La. 511, 65 South. 627.
There was judgment in the court below in favor of the plaintiff for the sum of $495.86. Plaintiff has appealed, and defendant has answered,, praying that plaintiff’s demands be rejected in toto and that it have judgment as prayed for in its answer.
Opinion.
As stated by the judge a quo, the items of attorney’s fees, expenses in estimating the timber, and in consulting counsel, have not been proven. Nor can punitive damages be a 1-lowed. In fact, plaintiff seems to have abandoned these items in the brief which was filed since this case was submitted.
Plaintiff also appears to concede that it was only contemplated under the contract, which had no definite period to run, that defendant should deliver such timber as it owned at the time of and during the life of the agreement; in other words that while the contract called for a minimum delivery of 10,000 feet per day, whenever the defendant delivered all the hard wood and cypress which it owned, the undertaking would have in that respect been fulfilled.
The principal dispute is as to the amount of the timber, plaintiff claiming that defendant owned and should have delivered a total of 5,079,000 feet of the character covered by the contract, at the rate of not less than 10,000 feet a day; while defendant contends that it did deliver all of the timber which it owned and which could reasonably have been done under a just interpretation of the agreement to wit, 3,655,000 feet.
In a well-considered written opinion found in the record the lower court found that the defendant had delivered all of the timber which it could reasonably be required to. deliver; and, after a careful reading of the evidence on this point, we are constrained to agree with him. The contract in this case appears to have been negotiated by the executive heads of these two companies somewhat informally, and apparently without the assistance of a lawyer. We think it fair to conclude that defendant, which was engaged in the manufacture of pine lumber, desired to dispose of its hard wood interspersed with its pine, inasmuch as all of it could doubtless be cut along together with less trouble and expense than to go back after the hard wood at a later date; and plaintiff felt that, with the assurance of the delivery of not less than 10,000 feet of timber daily, it could afford to erect its mill, and would be able to manufacture the hard wood timber with a nice profit to itself. The defendant also owned some tracts of hard wood timber which were not so scattered among the pine, but in both cases we think, as above stated, that all of it which could reasonably be handled was cut and delivered. It is true that the plaintiff’s estimators claim to have found approximately 1,500,000 feet scattered over some seven townships, in most eases averaging from 1,000 to a few thousand feet to the 40 acres, but it is shown by the record that land which cuts less than 1,000 feet to the acre is not a merchantable proposition. Most, if not all, of the timber found by plaintiff’s estimators was on lands which had not been cut over for the pine.
As to the claim for the failure to deliver the percentage of hickory called for by the contract, the evidence shows that the defendant delivered such as the land afforded, until it was notified by the plaintiff that it did *299 not want any more of that character of hickory. As to cypress it is also shown that some was delivered by defendant, but no separate record thereof was kept by plaintiff, and there is nothing upon which to predicate a judgment in this respect.
[1, 2] We think the lower court has hit upon a fair and reasonable basis for the settlement of the rights of the parties, which we adopt and quote as follows:
“All the timber has been delivered, and the defendant has paid the profit on 1,086,000 feet of logs that were subsequently delivered and from which plaintiff made a profit. Should defendant be made to pay a profit on more timber than it had to deliver? Prom December 5, 1911, to January 24, 1914, plain tiff could have manufactured 6,590,000 feet of logs into lumber, but defendant had only 3,635,000 feet of logs to deliver. It obligated to make this delivery in 363.5 working days. Plaintiff was kept 295.5 working days longer than necessary to fulfill its part of the contract. During this time it could have manufactured into lumber 2,955,000 feet of logs from which it would have received a profit. Should the defendant pay the profit on this lumber when it did not have the timber to deliver?
“If not, what, then, would constitute the element of damages occasioned .plaintiff by the failure of the defendant to deliver the logs timely as it had obligated to do? The net profits made on the lumber during the first months the mill was operated was $7.43 per 1000 feet. About the 1st of August, 1913, prices went down in the hard wood market, and after then the profit was only $5.11 per 1000 feet. The average price for all the lumber sold during the time shown was $6.11 per 1000 feet.
“Had the logs been delivered as contracted the entire amount of logs could have been manufactured into lumber and a profit of $7.43 per 1000 feet made before prices went down in the hard wood market. To express it in another way, plaintiff would have received $2.32 per 1000 feet more on 2,133,306 feet of lumber than it really received. Because of the delay in the delivery of the logs, plaintiff lost in profits $4,949.37. Plaintiff could have manufactured the logs, if promptly delivered, within about 15 months after the mill was put in operation, and would have received a profit of $7.43 per 1000 feet during this period of time. This loss is clearly attributable to the delay of the defendant, in making the delivery promptly, and it should suffer the consequences flowing from its own act.
“It is shown that plaintiff was kept 295.5 working days longer than necessary to manufacture the timber at an expense of $348.40 per month; in other words, there was about 11% months defendant was waiting on plaintiff to comply with its obligation. At different times, however, during this time plaintiff had made request that defendant withhold the delivery of logs for the reason the employes wore taking holidays, or repairs were necessary to be made on the mill. After approximately this time as best we can from the testimony, there would be about 10 months consumed during the life of this contract by plaintiff waiting for the delivery of the logs.
“Should the overhead charges during this period of time be assessed as an item of damages against the plaintiff? As the Supreme Court said in the former case: ‘If the defendant had complied with the contract, plaintiff would have had to bear the expense of operating its mill,’ etc. We are not disposed to controvert the ruling of the higher court, but, viewing this case as it is presented, involving the question of a final accounting, we are disposed to view this claim as an item of damages in adjusting the differences finally between the plaintiff and defendant. The amount shown is $34S.40 for a period of 10 months, or the aggregate amount of $3,484.
“The two items of damage herein allowed make a total of $8,433.37, and defendant has already paid $7,937.51 as damages for failure to comply with the contract during the first 10 months the mill was in operation, and, taking the difference between the two amounts, it leaves a balance of $495.86 in favor of the plaintiff.
“We are fully in accord with the decision of the higher court in holding that the defendant should not be condemned to pay plaintiff the profit of $7.43 per 1000 feet and the fixed charges also. Plaintiff must incur the expense of the fixed charges to place itself in the position to share the profit on the lumber sold, but the contract extended over a period of 10 months during which time plaintiff was paying the overhead charges and waiting for the defendant to comply with its contract without receiving any profit whatever. For this period of time we think the overhead charges should be assessed as an element of damages against the defendant.”
For the reasons assigned, the judgment appealed from is affirmed, at the cost of the appellant. ¡