# 8205

No. 8205

COURT OF APPEAL

PARISH OF ORLEANS.

———

V. S. DANTONI & CO.

versus

FRANCISCO BERTOLLI & CO.

———

Court of Appeal
Parish of Orleans
Filed 1/16/22
A. J. Stansbury

8205

Dinkelspiel; J.

This litigation arises under the following facts:

Plaintiff alleges the failure by the defendant to deliver to him according to telegraphic orders, two hundred gallons of olive oil which he purchased at $4.30 a gallon and for which he had sent a telegraphic money order as demanded by defendants, for One Hundred Dollars, on account of purchase price and that on January 21st, 1919, plaintiffs wired defendants, "Please wire lowest price and terms, two hundred gallons olive oil, five gallon cans"; and that on the same day the defendants wired in response to the telegram:

"Lowest price, two hundred gallons olive oil, five gallon cans $4.30 per gallon, f. o. b. New York, payment advance one hundred dollars, balance sight draft against bill of lading; wire immediately".

Plaintiffs further allege that in response to the latter telegram, on January 22nd, the next day, he remitted the one hundred dollars and in a telegraphic message "ship me through Morgan Line, two hundred gallons olive oil; this one hundred dollars confirms your request".

Subsequently on the next day, January 23rd, defendants "acknowledged receipt of the One Hundred Dollars, account payment of the two hundred gallons of olive oil ordered by you received, will ship by Morgan Line".

Plaintiffs allege further that relying on the agreement thus conveyed, he had made a sale of the oil in question at $5.50 a gallon, same to be delivered to purchasers on arrival in New Orleans, on January 27th, 1919, as expected under the agreement; thus making profit of $240.00.

And alleging that defendants instead of complying with this agreement, failed so to do, and did not ship the order at once by the Morgan Line which they should and could have done, delaying shipment of oil to such an extent that the price of oil dropped One Dollars a gallon after the expected time of

334

arrival of said consignment in New Orleans, and they therefore were deprived of an additional profit, because the sale could not be made at the agreed price and lost a dollar a gallon or an additional two hundred dollars.

That the sales made for two hundred gallons of oil were cancelled by the purchasers on account of failure to deliver in time stated and alleging that defendants were not residents of New Orleans, but resided in the City of New York and having no property within the jurisdiction of this Court beyond that shipment of oil in question, prayed for a writ of attachment and sequestration, seized under said writs, the property in question and also prayed for a judgment for $540.00 with interest.

The writs issued, the property in question was seized and subsequently by an agreement between the parties was sold for account of whom it may concern, the funds deposited in the hands of the Sheriff, where they are at this time, the defendants filing a prayer for oyer which was complied with and subsequently filed an exception of no cause of action, which was by the Court after hearing, referred to the merits.

Then answering, defendants denied the allegations generally and averred that defendants are a legal copartnership, domiciled in New York City and that plaintiffs were justly and truly indebted unto them in the sum of $760.00, balance due for merchandise involved in this case, admitting they had received the one hundred dollars through telegraphic advices.

They admit the telegraphic request of plaintiff to sell two hundred gallons of olive oil to them at $4.30 per gallon; they admit they accepted said offer on date set forth January 22nd, 1919.

They allege that they shipped said two hundred gallons of oil on January 27th and to do so were compelled to pack the oil in cans and cases in order to put same in deliverable condition; they admit that in accordance with the terms of the contract and written instructions received from plaintiff they sent a sight draft attached to the bill of lading for the price

335

of said oil to the Canal Bank & Trust Company of the City of New Orleans and that in due course that draft with bill of lading attached was presented to plaintiffs who refused without cause to pay said draft and therefore wrongfully causing the writs of attachment and sequestration to be issued and subsequently sold by consent of counsel of both parties, without prejudice, for account of whom it may concern; and alleging finally that defendant had faithfully performed all its obligations under said contract and is entitled to judgment for $760.00, balance due.

We have carefully examined the record in this case, together with all the documents, telegrams, connected with same and we find that plaintiffs wire did, on Janaury 21st, 1919, defendants, asking for their lowest price and terms, two hundred gallons olive oil, five gallon cans; and on that same day defendants quoted the price at $4.30 per gallon f. o. b. New York, together with a payment of one hundred dollars in advance, balance sight draft against bill of lading.

To this acceptance, also by wire, plaintiffs ordered defendants to ship immediately via Morgan Line, two hundred gallons olive oil and remitted through telegram, one hundred dollars requested by defendants, and in reply to this telegram defendants acknowledged by wire, the receipt of one hundred dollars and agreed to ship the oil via Morgan Line.

We find that instead of complying with plaintiff's request and shipping via Morgan Line, that defendants contended that on account of a strike on that line that they had shipped via the Pensylvania Railroad and this caused the delay for several weeks in the delivery of the oil, and in the meantime the oil had declined sufficiently to cause a cancellation of the sales made in contemplation of delivery, which could have been made if defendants had carried out the orders received for shipment and shipped in accordance with contract.

The evidence of the sales of the oil in question and cancellation of the orders/ therefor is supported by the testimony of D'ntani, Joseph Greco and Joseph Sale, who were the purchasers of the oil if delivery was made to them within the ten days under their respective contracts.

The Record presents also the evidence of the Agent of the Morgan Steamship Lines, giving the dates of the sailing of the vessels at the time in question, showing that if the shipment had been promptly made in accordance with orders received, they would have arrived here in ample time to have made the deliveries to the purchasers and to have yielded the profit claimed by plaintiff in this case; and we find further the testimony of this agent proves that there was no strike of the Morgan Line at the time in question.

In the case Bright vs. The Produce Company, recently decided by this Court, No. 8095. we held:

"Where a vendor fails to deliver the thing he has sold he owes to the purchasers as damages, the difference between the contract price and the market price of the thing on the day delivery should have been made."

And there cited numerous authorities in support of that doctrine.

In the 128th La. p. 126, Robinson vs. Berton, it was held:

"There was unquestioned delay in the delivery of some of the lumber and damages may be recovered from the vendors by the vendee for delay in delivery of the thing sold, according to the circumstances in the case."

As to that portion of plaintiff's claim for damages depending on what we consider to be speculative, this portion of the claim must be denied.

C. C. 1934; 127 La. 348; 35 Ann. 523; 47th Ann 648; 11th Ann. 300.

We find in the record/ that by agreement between counsel that the merchandise in question was sold at public auction

by the Civil Sheriff who has in his possession for account of whom it may concern, the sum of $469.13.

The evidence convinces us that the sales made by Dantoni, which were subsequently cancelled, would have yielded a net profit to him in the sum of $240.00 and in addition thereto the one hundred dollars paid by plaintiff to defendant prior to the shipment of the oil, in accordance with contract, making the sum of $340.00, which plaintiffs xxxxx from this record in our opinion are entitled to recover. The profits claimed by plaintiff otherwise are speculative and therefore under the authorities quoted plaintiff cannot recover.

For the reasons assigned it is ordered, adjudged and decreed that there be judgment in favor of plaintiffs, V. S. Dantoni & Company and against the defendant, Francisco Bertolli & Company, in the full sum of $340.00, with lien and privilege on the property sequestered and attached in this case, costs of appeal to be paid by plaintiffs, costs of lower Court to be paid by the defendants.

—Judgment amended and affirmed—

| | | |
|---|---|---|
| V.S. DANTONI & CO. | : | NO. 8205 |
| versus | : | COURT OF APPEAL |
| FRANCESCO BERTOLLI & COMPANY | : | PARISH OF ORLEANS |

ON RE-HEARING

WILLIAM A. BELL, JUDGE:

WILLIAM A. BELL, JUDGE:

On the 16th of January, 1922, there was judgment rendered herein by this court, resulting in a reduction of the judgment of the trial court from $540 to $340, interest, etc., in favor of plaintiff, and as thus amended, said judgment was affirmed.

Upon re-hearing and after re-examination of the record herein, we are of the opinion that our former judgment was erroneous and should be set aside.

This is a suit for damages alleged to have been suffered by plaintiff because of delayed shipment and delivery of 200 gallons of olive oil purchased by plaintiff from defendant in the latter part of January, 1919.

The contract of sale is shown by telegrams and letters filed in the record. It appears that on January 21, 1919, V. S. Dantoni & Company, plaintiff herein, of New Orleans, large dealers in olive oils and similar products, wired Francesco Bertolli & Company, of New York City, for lowest prices and terms on two hundred gallons of olive oil in five gallon cans. On the same day, immediate reply was made by Bertolli & Co., defendants herein, stating the price for such goods in five gallon cans would be $4.30 per gallon, f.o.b. New York, and that advanced payment for $100 should be made and balance paid by sight-draft against bill of lading.

On next day, January 22, 1919, plaintiffs remitted, by Western Union Telegraph Company, the one hundred dollars with following telegram:

> "Ship immediately via Morgan Line, two hundred gallons olive oil this one hundred dollars confirms your request."

Defendant wired plaintiff next day, January 23, 1919, as follows:

"Telegraphic remittance of
one hundred dollars account pay-
ment 200 gallons olive oil ordered
by you received we will ship by
Morgan Line."

The shipment was made by defendants on January 27, 1919, by rail, and not by water, as stipulated and agreed in the telegrams just quoted. On the day of the shipment the following letter from plaintiffs was received by defendants:

New Orleans, La.,
Jan. 22, 1919.

F. Bertolli & Co.,
15 West Houston St.,
New York, N.Y.

Gentlemen:

Your night letter received.
We wired you 100.00 as per your
request.

In making us the shipment
of 200 gallons olive oil in five
gallon cans, please mail draft to
Canal Bank & Trust Co. You may
ship via Southern Pacific Steam-
ship Company, which is also known
as the Morgan Line.

Hoping you will make
immediate shipment, we are,

Yours truly,

V.S. Dantoni & Co.,

by V. S. Dantoni.

On January 29, 1919, plaintiffs wired defendants:

"Please wire if you made
shipment and when."

To which, on same day, defendants replied:

"We made shipment Monday,
twenty-seventh instant, as per
yesterday's letter."

We find that the offer and acceptance of sale was definitely closed on January 22, 1919, with no subsequent alterations or conditions. Time was not of the essence of this contract, no fixed period for delivery being stipulated, and the vendees only stating, in their letter of January 22, (above quoted) that they hoped vendors would make immediate shipment, and also saying, "You may ship" via Southern Pacific, or Morgan Line. The testimony of one of the members of the defendant firm explains the natural, and what seems to us, were the usual and necessary delays in withdrawing the oil from cold storage, thawing, canning, packing, and shipping same. There was no negligent or improper delays whatever on the part of defendants, who started the order on its way five days after consummation of the contract, and two days before any inquiry or apparent attempt to put them in default, as shown by plaintiffs' wire of January 29, 1919.

It is true that both plaintiff and defendant agreed on the method of routing the shipment, but defendants' non-compliance with this part of the agreement is not shown to have resulted in any serious damage to the plaintiff nor to have been coupled with any fraud or bad faith on the part of defendants. The rail shipment seems, from the evidence, to have been resorted to by defendants upon mis-information given them by one of their employees as to a strike on Morgan Steamship Line, and this information seems to have been the only reason for defendants routing over the railway line on the very same day and on the earliest day upon which the order could have possibly been shipped.

There is nothing before us to show that at the date of purchase plaintiffs, in any manner, advised defendants that the order in question was to serve the purpose of re-sales at higher prices to contemplated or established customers, or

to fill specific orders previously secured. But even had such conditions surrounded this transaction, and had the rail shipment caused delays tending to the loss or cancellation of the re-sale orders, it would be necessary to plaintiffs' recovery of alleged loss of profits to show that there was no available market to which they could have resorted as another and different means of supplying the re-sale orders on terms as favorable as those anticipated at the hands of defendants. If it be shown that the buyer, upon default of the seller to deliver as agreed, or after reasonable delay, could have bought even in a higher market, and failed to do so, he cannot claim damages for loss of profits, especially if the original transaction was not predicated upon contemplated re-sales, and of which the seller was not previously notified before accepting the order.

We find, on more careful re-examination of the record, that plaintiffs had ample opportunity at the point where the order was to be delivered, and at the earliest time upon which it could have reasonably been delivered, to wit, New Orleans, January 28, 1919, to have purchased olive oil, in quantity and quality equal to that under the original order.

In fact, it is clearly shown from plaintiffs' own testimony, that such purchases were made by them prior to the alleged cancellation of the re-sale orders. We further find that the market was freely opened and that plaintiffs freely availed themselves of purchases at $1.00 per gallon less than those made of defendant, and with which they could have easily and immediately met the re-sales shown to have been secured at $1.20 advance over the defendants' price. In other words, it is plainly shown by the testimony hereinafter quoted, that had plaintiffs never reckoned with defendants it would still have been possible between January 28th and February 3, the time

or period still opened to plaintiffs for their alleged re-sale orders, to have profited at the rate of $2.20 per gallon, the market then being at $3.80 per gallon as against $5.50 per gallon, the re-sale contract price. The testimony of V.S. Dantoni is conclusive upon this point, and is now, upon our re-examination of the record, the impelling fact which influences us to a reversal of our former judgment. On p. 15 of the testimony this witness, a member of the plaintiffs' firm, testifies on cross-examination, as follows:

> "Q:- Did you make any effort to buy Olive Oil on the declining market?
>
> A:- Well, you mean previous to this purchase or after?
>
> Q:- On January 28th, when you found out that the market was declining, did you go out and try to buy any after that?
>
> A:- Yes, sir.
>
> Q:- Did you buy any?
>
> A:- $3,30 per gallon.
>
> Q:- How many gallons?
>
> A:- 218 Gallons.
>
> Q:- Did you use any of that in the fulfillment of your contracts?
>
> A:- No, sir.
>
> Q:- Could you have bought more at that price at the time?
>
> A:- Yes, sir.

We have given careful attention to argument and brief of counsel for plaintiff, as submitted upon the re-hearing of this case, but the above quoted testimony, which we especially noted at the re-hearing, and the effect of which is now stressed, has not been satisfactorily reconciled with plaintiffs' claim for damages sustained, or profits lost.

Under the facts of this case, as well as the law applicable to all similar commercial transactions, the only damage, following a breach of contract, which can be recovered, is that which both of the parties to the contract, in the absence of fraud or bad faith could have reasonably contemplated at the time of the contract. Rev. Civ. Code. Art. 1930 - 1934.

Plaintiffs' refusal to accept the shipment upon its arrival in New Orleans, on February 11, 1919, or to honor the draft with bill of lading attached, was not justified, when the facts are shown to have been such as plaintiffs' own testimony has here disclosed. The defendant corporation being an absentee, without an agent in the State, the oil in question was seized, upon the filing of plaintiffs' petition, February 21, 1921, writs of attachment and sequestration having been issued. By agreement of counsel for both parties to this suit, the oil was sold by the Civil Sheriff, and the proceeds derived therefrom, in the sum of $469.13 was deposited in the Sheriff's hands to await the final determination of this proceeding.

We find that if any fault existed in this matter, it was that of the plaintiffs, in not availing themselves of the opportunity to protect themselves against any loss due to the delays in the delivery of these goods. Concerning damages recoverable in contracts of sales, we find the above law to be no different from the jurisprudence of our State. In Elliott, on Contracts - Sales. Par. 5108 - Measure of Damages - Difference between contract price and market value, the text reads:

> "Where there is an available market, the measure of damages, ordinarily and in the absence of special circumstances, is the difference between the contract price and the market or current price of the goods at the time or times that they ought to have been delivered, or if no time was fixed, then at the time of refusal to deliver."

Foot-note:

> "As stated in a recent case applying the rule to a contract for sale of grain, the measure or damages for breach by a seller, of a contract for sale of grain to be delivered at a certain place, is the difference between the contract price and the market price of the same quality of grain at the place of delivery, at the time of the breach, if there was a market price at such time and place, where the buyer purchased same in a reasonable and diligent manner." Gaunt vs. Ralston, Purina Company, 198 Fed. 60, (U.S.C.C. 8th Circuit.)

In the instant case, the only damages that could have been suffered by the plaintiffs are those which must have arisen at the time that the delivery of the oil was refused. We find, from the evidence, that at that time, to wit, February 11, 1919, the market price, $3.30, was still very much below the contract price of $4.30 per gallon. Had the defendants been at fault, with the result that the goods failed to reach their destination within a reasonable time, (no time for delivery having been definitely stipulated), the only damage which could have been sustained would have been the difference between the contract price of $4.30, or some other higher market price. Such facts are not shown to have existed in the case before us. - Sutherland on Damages, Vol. 2, 4th Ed. Par. 651, p. 2277:

> "Where no time is fixed for delivery, and the delay has not been unreasonable, damages are computed as to the time delivery was refused."

Par. 653, p. 2297:

> "The defaulting vendor cannot be charged with more than that price (the market price) because the vendee had a contract for re-sale at a higher price."

P. 2299:

> "Where the market price is less than the contract price at the date when the contract requires delivery, the vendee can suffer no actual injury."

346

The recovery of that sum of money which measures the difference between the market value of the property at time and place of delivery, and the original contract price of the property, is such a sum as would be recoverable here, had defendants been at fault in failing to deliver at a specified time or in a reasonable time, and had the market price been higher than the contract price. None of these facts have been proven in the instant case. It is plain that there has been no damage suffered and that plaintiffs have no justification in fact or at law, in repudiating the contract.

Counsel for plaintiffs stresses in his brief the authorities cited by the judge of the trial court, and reported in 146 La. 296, Usrey Lumber Co. vs. Huic-Hodge Lumber Co., also 146 La. 511, Penick & Ford vs. Lagarde. But those cases are not applicable to the case under consideration, for the reason that in the cited cases definite time was stipulated for the performance of the contract, and for the further reason that the parties undertaking to sell and deliver were advised as to the purpose for the goods in question - to be furnished for manufacture and sale by the purchasers in a manufacturer's market. In these cases time was of the essence of the contract, and the vendors in both cases defaulted. In the case before us no definite date of delivery was specified, nor has it been shown in the evidence that time was of the essence such as to justify a rejection of the contract without putting in default. There can be no doubt that plaintiffs at no time specifically placed defendants in default, unless the letter of plaintiffs, written defendants under date of January 22, could be construed as an active placing in default. This letter, in fact, did not reach the defendants until January 27, and was not, in its language,

347

such a letter as could be intended for the purpose of putting in default, nor was it, at the time of its issuance, a time upon which putting in default would have been justified. It is also a fact that on the day of the receipt of this letter, the shipment went forward. If, by any possibility, it might be argued that there was a passive violation of the contract in that defendants failed to ship by sea as directed, there can be no doubt that in a provision of our Civil Code this passive violation could not have availed the plaintiffs without an active placing in default. R.C.C. 1932 - 1933.

Defendants have pleaded in re-convention, wherein they pray for a judgment representing the balance of the contract price of the goods sold by them to plaintiff, to wit, the sum of $760, one hundred dollars of the original purchase price having been paid by wire as a cash consideration on the day the contract was entered into.

It is contended by counsel for plaintiffs that, notwithstanding the claim for damages sustained, or for profits lost, they are entitled in addition thereto, to a refund of the hundred dollars originally deposited. Such contention would be sound if the contract in question could have been rightly repudiated. Otherwise, recovery of this amount is not possible. It follows that the judgment of the trial court should be reversed, and that the writs of attachment and of sequestration should be dissolved. We find that the demand in re-convention is well founded, and must be recognized.

It is therefore ordered and adjudged and decreed that the previous judgment of this court be set aside; that the original judgment of the trial court be, and the same is hereby reversed and annulled, and that the writs of sequestration and attachment be, and the same are hereby dissolved, *and plaintiffs' demand rejected.*

It is further ordered, adjudged and decreed that the demand in re-convention, of Francesco Bartelli & Co. vs. V. S. Dantoni & Co., in the sum of $760 with the judicial interest from July 1, 1919, be and the same is hereby maintained, and that the Civil Sheriff of the Parish of Orleans be, and he is hereby directed to pay unto the *plaintiff* in re-convention, the sum of $469.13, the proceeds of the goods herein seized and sold, a credit for said amount to be given to V. S. Dantoni & Co., *defendant* in re-convention, as against the judgment for which they are hereby cast, in the sum of $760.00 with interest as stipulated.

It is further ordered, adjudged and decreed, that V.S. Dantoni & Co. pay all costs of both courts.

JUDGMENT REVERSED, AND DEMAND IN RE-CONVENTION

MAINTAINED.

March 13. 1922