OVERTON, J.
 

 This is a suit for $10,352.50, claimed as damages for the alleged breach of a contract, entered into on October 1,1920, by W. C. Nabors and defendant. Nabors assigned the contract, which it is alleged was breached, to the Nabors Oil Corporation, Inc., and both Nabors and that corporation are the plaintiffs herein, the former suing for the use and benefit of the latter.
 

 The contract, alleged to have been breached, is one by which Nabors, who was engaged in selling automobile lubricating oils and gasoline by wholesale, agreed to sell and deliver to defendant, who was engaged in the retail of these commodities from certain premises, in Mansfield, La., leased by him, for his use as a filling station, for the period of the contract. By this contract, defendant agreed to purchase from Nabors all the automobile lubricating oils and gasoline, during that period, which he might require to operate his filling station. The price at which Nabors agreed to sell defendant lubricating oils was stated in the contract to be a. fair competitive one, quality and service to be considered, and the price at which he agreed to sell defendant gasoline was 3 cents a gallon less than the retail price in the territory including and surrounding Minden, La. Nabors paid defendant $3,000 cash as consideration for the contract. He reserved the right to cancel the contract, with or without cause, upon forfeiting the amount paid and upon releasing defendant from all further liability under the contract. Defendant also reserved the right to cancel the contract, with or without cause, upon giving Nabors six months’ written notice of the intention to cancel, and upon returning to him, at the time of the cancellation, the pro rata balance of the $3,000 paid by Nabors, as consideration for the contract; that balance to cover the unexpired term of the contract, figured on a time basis.
 

 The foregoing contract is made part of the petition herein. The petition, inter alia, sets forth that, on May 24,1927, defendant, acting under the terms of the contract, elected to terminate it, as of date November 24, 1927, and returned to the Nabors Oil Corporation, Inc., the assignee of W. C. Nabors, a pro rata portion of the amount originally paid as consideration for the contract, the amount returned being proportionate to the unexpired term of the contract; that, during the time the contract remained in force, Nabors or his assignee, the Nabors Oil Corporation, Inc., as well as defendant, remained in business; and that, although either of thq former was ready, willing, and able to comply with the contract, and was, at no time, in default, defendant breached it by purchasing, during the period from November 1, 1923, until the diay the contract was terminated, lubricating oils from others than either of the plaintiffs, and dispensed them from his filling station; and that from November 1,1926, until the day the
 
 *62
 
 contract was terminated, defendant, in violation of the contract, purchased gasoline from others, and dispensed it from his filling station ; and that, as a result of these breaches of the contract, occurring prior to the day it was terminated, which took place, in the face of protests made, plaintiffs have suffered damages in the sum of $10,352.50, the amount sued for.
 

 In defense of this demand, defendant filed an exception of no cause or (right of action. This exception, after argument had, was referred to the merits. After the disposition thus made of that exception, defendant filed a plea of estoppel. This plea was sustained by the trial court, and plaintiffs’ demand was dismissed.
 

 While the exception of no cause or right of action was not formally passed upon by the trial court, nevertheless both sides have argued it fully in their briefs. In view of the fact that both sides have discussed the exception fully in this court, and in further view of the fact that the exception might have been filed here, we shall consider and dispose of it.
 

 The exception rests upon the grounds, first, that the contract, sued on, is null and void as containing a potestative condition, in that plaintiff was given the right to cancel the contract, with or without cause; secondly, that the contract is null and void, since it is a nudum pactum, in that it lacks mutuality, because it places no obligation whatever on defendant to purchase from Nabors or his assignee any oil or gasoline, or to do so for any given time; and, thirdly, if it be held that the contract was a valid one, then that plaintiffs have waived any breach thereof by accepting a pro rata portion of the consideration paid for it, and have thereby estopped themselves from claiming damages for any breach of the contract that may have occurred.
 

 The law governing potestative conditions is to be found in the Civil Code. Article 2024 thereof provides that “the potestative condition is that which makes the execution of the agreement depend on an event which it is in the power of the one or the other of the contracting parties to bring about or to hinder.” Article 2034 of the Civil Code provides that “every obligation is null, that has been contracted, on a potestative condition, on the part of him who binds himself.” Article 2035 provides that “the last preceding article is limited to potestative conditions, which make the obligation depend solely on the exercise of the obligor’s will; but if the condition be, that the obligor shall do or not do a certain act, although the doing or not doing of the act depends on the will of the obligor, yet the obligation depending on such condition, is not void.”
 

 It is urged by defendant that the contract is null under the provisions of these articles, because Nabors or his assignee could at any time terminate the contract, even on the
 
 day-following
 
 its execution, and this though defendant might object to its termination.
 

 While Nabors or his assignee might have so terminated the contract, yet neither could have done so without forfeiting the unearned portion of the $3,000, stated to be the consideration for the contract, which, under the circumstances, would be equivalent to paying that much for the privilege of terminating it.
 

 In Blanchard v. Haber, 166 La. 1014, 118 So. 117, 119, in discussing article 2035 of the Civil Code, this court said: “That article was not taken from the French Code, and its meaning is not quite plain, or easy to reconcile with articles 2024 and 2034. It has been decided, however, that article 2035 means simply this, that, where a conditional obligation to pay a certain price depends upon how the obligor may exercise an option to do or not to do a certain thing, the contract is not null if
 
 *64
 
 a serious consideration has been given or reciprocal obligations are incurred.” ■
 

 In Houssiere Latreille Oil Co. v. Jennings-Heywood Oil Syndicate, 115 La. 107, 129, 38 So. 932, 940, where the contention was made that a mineral lease was null, because it contained a potestative condition, in that it reserved to the lessee the right to cancel the lease, at any time, on paying the lessor $100, and therefore left it to the will of the lessee as to whether the lease should continue, this court said: “One is not said to do at will that which he can do only upon giving an equivalent for the privilege of doing. In this instance the defendant can cancel the contract only upon paying $100, and, if such a condition could be called potestative, it falls within the rule of Civ. Code, art. 2035, which provides that the potestative conditions which nullify obligations are those ‘which make the obligation depend solely on the exercise of the obligor’s will; but if the condition be that the obligor shall do or not do a certain act, although the doing or not doing of the act depend on the will of the obligor, yet the obligation depending on such a condition is not void.’ ”
 

 In this instance, the amount to be forfeited by Nabors or his assignee, in the event of the cancellation of the contract by either, was of sufficient proportion, with reference to the contract, to make the amount, which was the equivalent of the consideration to be paid for the cancellation, a serious one, and was evidently so considered by the parties at the time the contract was entered into. We therefore think that the contention of defendant that the contract was not binding, because of the alleged potestative condition, has not a sufficient basis on which to rest, and hence cannot be sustained.
 

 The contention that the contract was null, because it was a nudum pactum and was wanting in mutuality, rests upon the theory that the contract did not bind defendant to buy any oil or gasoline from Nabors or his assignee whatever. The contract was not a nudum pactum, for not only was $3,000 paid by Nabors to defendant in consideration of defendant’s purchasing all lubricating oil and gasoline, required by the latter for the operation of his filling station, and in consideration of other privileges, granted Nabors in the contract, but, by accepting the $3,000, defendant impliedly bound himself to continue the operation of the filling station for the period of ten years, or until he elected to cancel the contract by the giving of six months’ written notice and by returning the unearned portion of the $3,000 paid. As a matter of fact, as appears from the allegations of the petition, defendant did continue to operate the filling station until he terminated the contract in the manner provided by that instrument:. So long as he operated the station he was bound by the terms of the contract to purchase all lubricating oil and gasoline, to be sold from it, from Nabors, or, as it sufficiently appears from the allegations of the petition, from Nabors’ assignee, who was obviously accepted in the place of Nabors.
 

 Defendant has cited a number of decisions, which he urges support his position that the contract, in this instance, lacked mutuality -and was a nudum pactum. We fail to find, however, that these decisions are pertinent. The cases cited, which more resemble the present case than any of the others, are Nelson v. Barber, 143 La. 783, 79 So. 403, Blackshear v. Hood, 120 La. 966, 45 So. 957, and Campbell v. Lambert & Co., 36 La. Ann. 35, 51 Am. Rep. 1.
 

 In the Nelson Case the defendant Barber, who was a baker, contracted to sell to the plaintiff, Nelson, all the bread he might re
 
 *66
 
 quire for his retail stores, for a specified time, at 2% cents a loaf, less 5 per cent, for cash. The contract, unlike the contract in the present case, reserved to Nelson the privilege of selling another make of bread at not less than 4 cents a loaf.- After Barber had delivered bread to Nelson, under the contract, for six months, he refused to continue to deliver under it, and Nelson sued for damages for a breach thereof. Barber contended that the contract was null, because it was wanting in mutuality. The court held that the clause in it, reserving to Nelson the right to sell another make of bread, left Nelson free to purchase from others than Barber all the bread required for his stores, provided he sold it for not less than 4 cents a loaf, and therefore that this clause destroyed the mutuality of the contract by leaving Nelson free to buy the bread, required for his stores, from Barber, or not, as he saw proper.
 

 There is no such clause in the contract in the case at bar, and therefore the case cited does not support defendant’s position. In fact, in the case cited, the court distinctly, in its reasoning, recognizes as valid such a contract as the one here involved.
 

 The Blackshear Case, relied on by defendant, grew out of an' alleged timber agreement, whereby Hood & Crawford were granted permission to cut and haul away trees belonging to Blackshear within one mile of their mill site, they to keep a correct record of all timber cut and used, and to pay Blackshear for it at the rate of 75 cents a hundred feet as fast as cut and used. Hood, who succeeded the firm of Hood & Crawford, undertook, under the alleged contract, to cut Blackshear’s timber, and Blackshear enjoined him from doing so, contending that the so-called contract lacked mutuality, and at best was a mere license, revocable at will. The court found that nothing was paid for the privilege, that Hood was under no obligation to cut the timber, .and therefore held that the contract was null, as it was wanting in mutuality,.and at best was a mere license, revocable at will.
 

 The contract in that case was unlike the one in the present case, for there nothing was paid for the right, nor was Hood bound to supply his milTfrom Blackshear’s timber, but was at perfect liberty to ignore that timber altogether and supply his mill entirely from other sources.
 

 The Lambert Case, relied on by defendant, is in principle very similar to the two preceding cases. In that ease it appeared that Lambert & Co. agreed to supply Campbell with such quantities of Pittsburg Coal as he might require for the period of one year, up to 60,000 barrels, with the privilege of ordering 20,000 barrels additional or more, at the price of 38 cents a barrel, payable at the end of each month. Lambert & Co. endeavored, at considerable loss, to comply with their agreement for awhile, but finally refused to comply further, and a suit for damages, based on the contract, followed. The court found that the contract imposed no obligation whatever on Campbell to purchase any coal from Lambert & Co., and therefore held that the) agreement was a nudum pactum.
 

 In that case, as in the others, not only does it appear that nothing was paid for the privilege, but it also appears that Campbell was at liberty to ignore the contract and obtain the coal he desired elsewhere, whereas, in the present case, defendant was obligated, so long as the contract continued, to purchase from plaintiffs all the oil and gasoline required by him to operate his filling station, and plaintiffs were obligated to deliver the oil and gasoline, in default of their terminating the contract by forfeiting the unearned part of the consideration paid.
 

 In our opinion, the contract, declared upon in this case, is not void for want of mu
 
 *68
 
 tuality. A case very similar to the present one is that of S. B. Smith & Oo. v. R. S. Morse & Co., 20 La. Ann. 220. In that ease R. S Morse & Co. agreed to purchase, for a specified time, at a fixed price, from S. B. Smith & Co. all the ice necessary for their hotels. S. B. Smith & Co. sought to avoid the contract on the ground, among others, that R. S. Morse & Co. were not bound by it, as they might, at pleasure, refuse to get ice from them, but the court held otherwise, and disposed of the contention by saying: “The obligation imposed on Morse.& Co. by the contract, was, that all the ice that would necessarily be required for their hotels should be taken from Smith
 
 &
 
 Co. at a stipulated price, which was regulated more than once between the parties, to adapt it to the state of the times. Had Morse & Co. purchased ice from other parties, it would have been a violation of their agreement with Smith & Co., who would have .been legally entitled to redress for its infraction.” See, also, Louisiana Farm Bureau Cotton Growers’ Coop. Ass’n v. Clark, 160 La. 294, 107 So. 115.
 

 The third ground, urged why the exception of no cause or right of action should be sustained is virtually repeated in the plea of estoppel, and forms the sole ground of that plea. Therefore we shall consider it in considering the plea of estoppel, which was tried on the face of the papers.
 

 .The plea of estoppel rests upon the ground that plaintiffs, having elected to accept the notice of the termination of the contract, given by defendant, and the pro rata portion of the consideration originally paid, proportionate to the unexpired period of the contract, without protest, thereby recognized the contract to be in full force and effect as of date the notice was given by defendant and the return of the pro rata portion of the consideration tendered, and ^.re now estopped from setting up any prior breach of the contract or of claiming damages under that instrument.
 

 Defendant argues, under this plea, that the moment a contract is breached it ceases to continue to be in full force and effect, and nothing further is due under its terms, except an adjustment of the rights of the parties, up to the time of- the breach. He then argues that, since plaintiffs recognized defendant’s right to give the notice, by acting upon it and by receiving, at the same time, the pro rata balance of the consideration, according to the terms of the eontracf, they thereby recognized the contract as being, at that time, in full force and effect, and therefore recognized that it had never been breached, and hence that plaintiff is estopped to assert any breach of the contract prior to that time, and, in fact, to claim any damages at all for any breach of the agreement.
 

 Plaintiff’s position is not tenable. We know of no law, and feel satisfied that there is none, which terminates a contract, against the will of the party aggrieved, because in some respect it was breached. The breach may justify the person aggrieved to treat the contract as terminated or to sue for its rescission, but the one committing the breach cannot avail himself of the breach. It is true that a person aggrieved by the breach of a contract may estop himself from setting up the breach. An estoppel, however, to set up the breach, and to claim damages therefor, does not result from the fact that the party against whom the breach was committed, and who had not terminated the contract, acted upon notice given by the opposite party, according to the terms of the agreement, to terminate it, and accepted the proffered return of a part of the consideration, which, by the terms of the contract, was due him, and a tender of which was necessary, under the instrument, to end it. Plaintiffs, by so doing, waived nothing, but merely recognized defendant’s right to terminate the contract according to its terms. Defendant’s right to terminate the agreement was
 
 *70
 
 not dependent upon Ms not having breached it. The right existed without reference to whether he had breached the contract or not. Therefore, by recognizing defendant’s right to terminate the agreement, and by accepting the proffered return of the required amount of the consideration to terminate it, plaintiffs did not thereby recognize that defendant had not breached the contract, nor did they thereby waive any breach thereof.
 

 Defendant has cited several cases to sustain his plea of estoppel, but they are not applicable to the facts disclosed in this case. Here, it does not appear that plaintiffs did anything inconsistent with their right to sue for damages for the alleged breaching of the contract, or that makes it inequitable to permit them to sue therefor. In fact, it appears from the petition, upon the face of which the plea was tried, that plaintiffs protested to defendant against the breaching of the agreement.
 

 Our conclusion is that the exception of no cause or right of action and the plea of estoppel should be overruled.
 

 For the reasons assigned, the judgment appealed from is' set aside, the exception of no cause or right of action and the plea of estoppel are overruled, and this case is remanded to be proceeded with according to law, defendant to pay the costs of this court, and the remaining costs to abide the final determination of this case.