143 So. 330

**NABORS OIL CORPORATION, Inc., et al. v. SAMUELS.**

**No. 31156.**

June 20, 1932.

Rehearing Denied July 20, 1932.

Parsons & Colvin, of Mansfield, for appellants.

Craig, Bolin & Magee, of Mansfield, for appellee.

OVERTON, J.

This is a suit for damages in the sum of $10,352.50. The cause of action rests upon an alleged breach of a contract by defendant to purchase from plaintiffs all of the gasoline and lubricating oil to be dispensed by him from certain premises during a period of ten years, beginning January 1, 1920.

The essential part of the contract, so far as the contract is involved in this case, reads as follows:

W. C. Nabors (who later became the assignor of the Nabors Oil Corporation, Inc., and who is the other plaintiff) agrees to sell and deliver to H. H. Samuels all of the automobile lubricating oils and gasoline purchased by H. H. Samuels, and said Samuels agrees to purchase all of the automobile lubricating oils and gasoline sold by him or his associates for the period of ten years covered by a certain lease on property to be used for a filling station, said lease executed by B. Y. Wemple to H. H. Samuels.

"The price agreed upon for gasoline is three cents per gallon less than the retail (not wholesale tank wagon price) of gasoline in this territory made by the Standard Oil Co. of La., generally known as the retail filling station price. The price of automobile lubricating oils are to be fair competitive prices, quality and service both considered."

In another part of the contract, unnecessary to give in detail, the right of either party to terminate the contract, on complying with certain conditions, was recognized. The price at which the gasoline was to be sold was one cent a gallon lower than the usual cost to retailers, and, as a further consideration, the coplaintiff, Nabors, paid to defendant the sum of $3,000, when the contract was signed.

Defendant urges the inferiority of the lubricating oil and gasoline delivered to him by Nabors as his defense, and, in addition thereto, he urges, so far as relates to the contract for the lubricating oil, the defense that, about November 1, 1923, Nabors released him from all obligations to purchase oil from him thereunder, he (defendant) to continue to purchase gasoline from him exclusively under the con-

tract. Defendant also has a reconventional demand, based on the loss of profits, due to the inferior quality of oil and gasoline delivered to him. There had been exceptions in the case, but they were disposed of, on appeal, by this court in the case of Nabors Oil Corporation v. Samuels, 170 La. 57, 127 So. 363, where the exceptions were overruled and the case remanded.

Following the remand of the case, after a rather lengthy trial, in which considerable oral evidence was introduced, the lower court rendered judgment rejecting plaintiffs' demand, and defendant's reconventional demand, plaintiffs to pay the costs of the main demand and defendant of the reconventional demand.

The contract, it may be said, as also the suit, is divisible into two parts—one part involving the contract touching the sale and purchase of oil and the other touching the sale and purchase of gasoline. Defendant's contention that he was released from the contract, so far as it relates to oil, by the coplaintiff, Nabors, we think, is supported by the weight of the evidence. Defendant testified that, while protesting to Nabors as to the inferior quality of the oil that was being delivered, the inferiority being due largely to the presence of water, which, because of the condition of Nabors' oil tank, had gotten into the oil, and while bringing to his attention the complaints that his customers were making concerning the oil, and while questioning Nabors concerning the cancellation of that part of the contract, Nabors released him from the part relating to the purchase of oil, saying that he could purchase oil where he wished, but that he (Nabors) expected him

to continue to purchase gasoline from him, as provided in the contract. This statement seems to be corroborated by the conduct of the parties, for thereafter, without any interference on the part of Nabors, defendant sold oil openly and to the knowledge of Nabors, purchased from others, though occasionly purchased some from Nabors. This evidence, we think, outweighs plaintiff's uncorroborated statement that he always considered that defendant was not released from purchasing oil from him as provided by the contract.

Up to the day of the release, defendant bought all of the oil, dispensed by him from the filling station in question, from Nabors. As to the oil purchased thereafter from others, plaintiffs, under the finding of fact touching the release, has no right to recover, for defendant was purchasing within his rights.

 We now come to that part of the contract involving the purchase and sale of gasoline. This part of the contract was terminated by defendant, in accordance with the provisions of the contract, as of date May 24, 1927, by the giving of the required notice, and by the return of the pro rata portion of the consideration paid by Nabors on the signing of the contract. The suit, which involves the loss of profits to plaintiffs, does not include any loss following the cancellation of the contract. All gasoline purchased by defendant was paid for by him in full. The question is whether plaintiffs are entitled to recover for the loss of profits, brought about by defendant's purchasing gasoline from others. This right of recovery involves the quality of the gasoline that plaintiffs delivered to defendant. The contract is vague as to the quality to be delivered. The trial court

therefore did not err in receiving parol evidence to show the quality of the gasoline the parties to the contract contemplated. The evidence clearly shows that the quality of the gasoline to be furnished was to be on a parity with that usually sold for operating automobiles by the major companies. It was with such gasoline that defendant had to come in competition. The evidence is conflicting as to whether the gasoline furnished was equal to any such standard. Defendant has produced a number of witnesses—some thirty odd—whose testimony leads to the conclusion that the gasoline delivered did not approach that quality. In many instances, automobiles which failed to run properly while using gasoline furnished to defendant by plaintiffs ran properly, without any mechanical changes or repairs, upon supplying them with gasoline usually sold by the major companies. In addition, defendant produced several proprietors of gasoline stations who testified that they had to quit purchasing from plaintiffs because of the complaints as to the quality of gasoline furnished by them. On the other hand, plaintiffs have produced a number of witnesses, including several proprietors of gasoline stations, who testify that they have not experienced any difficulties in using the gasoline furnished by plaintiffs or that they have not received any complaints touching it. Our analysis of the evidence satisfies us that the evidence, supporting defendant's position, outweighs the other.

 Plaintiffs, by delivering inferior gasoline, were actively violating their contract. Levy v. Schwartz & Bros., 34 La. Ann. 209; Payne & Joubert v. Amos Kent Brick & Lumber Co., 110 La. 750, 34 So. 763. The effect of the delivery to defendant of inferior gaso-

line was to cause his business to decline. In order to build it up again, it behooved him to buy elsewhere. He had no reasonable means of knowing when inferior gasoline was being delivered, except through complaints made to him, which he brought to plaintiffs' attention from time to time. In these circumstances, plaintiffs are not entitled to damages for lost profits, occasioned by the purchase of gasoline from others. The loss was brought about by plaintiffs' own fault. Plaintiffs had not complied with their part of the contract.

As to defendant's reconventional demand for loss of profits, the evidence leaves the amount of loss too uncertain to be allowed, even if the loss were otherwise allowable under the facts.

The judgment appealed from is affirmed, the costs of appeal to be divided between plaintiffs and defendant, both being appellants.