(70 South. 867)
No. 20207.

J. D. PACE & CO. v. ALEXANDRIA ELECTRIC RYS. CO. et al.

(Jan. 10, 1916. Rehearing Denied Feb. 21, 1916.)

*(Syllabus by the Court.)*

1. BROKERS ⬥84—RIGHT TO COMMISSION—BURDEN OF PROOF—AUTHORITY—PROCURING CAUSE.

A broker, in order to recover commissions, must prove his authority to act, and that he was the procuring cause of the transaction.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 104, 105; Dec. Dig. ⬥84.]

2. CORPORATIONS ⬥426 — OBLIGATIONS INCURRED BY GENERAL MANAGER — BINDING EFFECT.

Where the business of a corporation, composed of a few persons, is loosely conducted, mainly by an officer called "general manager," who is urged by the other members to make contracts and incur obligations on behalf of the corporation, pursuant to a policy approved by them, and not ultra vires of the corporation, and, such an obligation having been incurred, and the consideration therefor having been accepted by the board of directors, composed of practically all the members of the corporation, and having inured to its benefit, the corporation will be considered bound therefor, originally and also by ratification.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1596, 1702–1704, 1707, 1708, 1710–1716; Dec. Dig. ⬥426.]

Appeal from Thirteenth Judicial District Court, Parish of Rapides; W. F. Blackman, Judge.

Action by J. D. Pace & Co. against the Alexandria Electric Railways Company and others. From the judgment, plaintiff and defendant Kent Company, Limited, appeal. Affirmed.

Blackman, Overton & Dawkins, of Alexandria, for plaintiff. Hundley & Hawthorn, of Alexandria, for defendants.

SOMMERVILLE, J. Plaintiff, an ordinary partnership, engaged in the real estate business, sues the Alexandria Electric Railways Company, the Kent Company, Limited, J. A. White, individually, and I. D. White, individually, in the sum of $5,000 as commissions on the sale of the Alexandria electric railway, under an alleged contract of employment with I. D. White, vice president and general manager of the Railways Company, and J. A. White, president of the Kent Company. Judgment is asked against the two companies for the sum named; and in the event the court should conclude that petitioner had no contract with said companies, or either of them, then in the alternative, that there be judgment in its favor and against the defendant companies in solido for $10,000 on a quantum meruit; and,

again, in the alternative, if no judgment should be rendered against both or either of said companies, then that there be judgment in the sum of $5,000, with interest, against I. D. White and J. A. White, individually, and in solido; and, again, in the alternative, that it have judgment as the court may deem meet, equitable, and just between the parties.

Exceptions were filed by the parties, and were overruled. The defendant corporations answered that plaintiff had no dealings or transactions with them with reference to the alleged cause of action upon which the suit is based, and that whatever dealings and transactions it had with I. D. White and J. A. White were at its own risk, for both of them were without authority or power either to represent or to bind the defendant companies by such dealings and transactions. They deny that I. D. White and J. A. White made any agreement to pay plaintiff a commission or compensation of $5,000, or any other sum. They deny that they are, or that either is, bound by any agreement made by any member of the board of directors of said companies. The Kent Company admits that it purchased all the bonds issued by the Alexandria Electric Railways Company, and a large portion of the stock, and subsequently purchased the remaining outstanding shares, but alleges that the two corporations were and are separate and distinct, although all of the directors of the railways company were directors of the Kent Company. The Kent Company had two directors on its board who were not directors on the board of the Railways Company. The Kent Company admits that Ernest Boehme entered into a contract with it whereby it sold all of the stock and bonds of the Alexandria Electric Railways Company to said Boehme for $80,000; but it denies that plaintiff brought, or procured, or was the cause of securing said Boehme as the purchaser of said property, and alleges, on the contrary, that the negotiations were entered into, had, and were carried on directly with the said Boehme without the said plaintiff being the procuring cause thereof, or having anything really to do therewith, or that, if plaintiff did have anything to do in interesting the said Boehme in said purchase, that it was without the corporate consent or authority of defendants. Defendant the Kent Company further admits that the sale of the property was made on the 29th day of April, 1913, and delivery was made May 1, 1913.

There was judgment in favor of plaintiff and against the Kent Company, Limited, in the sum of $4,000, being 5 per cent. commission on the selling price of the railroad. There was also judgment in favor of the defendants, the Railways Company, J. A. White, and I. D. White, and against plaintiff, dismissing the suit as to them. Plaintiff and the Kent Company have appealed. Plaintiff has answered the appeal taken by the Kent Company, and asks that the judgment be increased to $5,000. Plaintiff also filed a plea of estoppel, claiming that the Kent Company was estopped from denying its liability on the amount sued for, for the reason that it is shown by the whole record that while the contract with it may have been unauthorized originally, the defendant, with knowledge of the unauthorized contract, made by one of its agents, accepted the labor of plaintiff, and cannot repudiate the part of the contract that is onerous while accepting that part which was beneficial.

At the time of the bringing of this suit, the Alexandria Electric Railways Company had been reincorporated under the name of the Southern Traction Company.

The boards of directors of the Alexandria Electric Railways Company and the Kent Company were practically the same persons. I. D. White was vice president and general manager of the Railways Company, and his

brother, J. A. White, was president of the Kent Company.

The Kent Company was organized for the purpose of dealing in real estate, buying and selling of live stock and other property, to own or lease and operate electric and other street railways, waterworks, sewerage systems, lighting plants, etc. Under these powers it bought and owned all of the stock and bonds of the Alexandria Railways Company; and it was this railway company, or the stock or bonds of said company which were sold to Boehme and his associates, and for which sale plaintiff is claiming a commission.

The Kent Company was not only the owner of the railway company, but the boards of directors of the two companies were the same, and these boards interlocked one another. The corporations were virtually one and the same, although holding two separate charters. The Railways Company was under the general management of I. D. White, the vice president of that company, and one of the directors of the Kent Company; and Mr. White admits having entered into contract with plaintiff to sell the railroad for $85,000; but the Kent Company denies all knowledge of the contract, and that White was authorized to act for it in the premises; but the testimony of almost every director of the Kent Company shows that he knew that plaintiff was engaged in procuring a purchaser of the railroad, although the board of directors of the Kent Company had not specially authorized such employment. The correspondence between plaintiff and prospective buyers was regularly submitted to I. D. White, one of the directors of the Kent Company, and the members of the board of directors were constantly kept informed as to the progress of the efforts of the plaintiff, extending through some three months, as is evidenced by frequent communications offered in evidence on the trial of the cause.

In the letter of January 3, 1913, written by E. J. Weaver, of Dayton, Ohio, to the plaintiff company, the name of Mr. Ernest Boehme is particularly mentioned as one of the parties who was interested in the proposition to buy the railroad; and it was Mr. Boehme and his associates who actually made the purchase on April 29, 1913. This letter is as follows:

"Gentlemen: In reply to your favor of December 31, 1912, I beg to state that Mr. Ernest Boehme, one of the parties who will be associated with us if this proposition is taken over by us, will call upon you in the next few days or week. He left Dayton on Wednesday, on a trip to Tyler, Texas, and after closing his business there, which will no doubt require not more than a few days, he will then call upon you and look over your proposition. Any courtesies which you show him will be appreciated by us.

"Yours very truly,      E. J. Weaver."

January 9, 1913, after a purchaser of the railroad was found by plaintiff, the board of directors of the Kent Company, Limited, met and authorized two of its directors, I. D. White and J. W. Hawthorn, to sell, dispose of, and deliver the stocks and bonds of the Alexandria Railways Company, owned by the Kent Company, Limited, and amounting to the sum of $81,000 in bonds, and $42,000 par value of stock. Again, May 7, 1913, the board of directors of the Kent Company met, and J. W. Hawthorn and I. D. White reported that the stocks and bonds of the Railways Company had been sold to Ernest Boehme, and the contract of sale was ratified and approved, and payments were made subsequently in accordance with the terms of said contract. The said I. D. White was a member of the board of directors of the Kent Company who had been negotiating with plaintiff for the sale of the railroad, and J. W. Hawthorn was a member of the board of directors of the Kent Company, and one of the attorneys of that company, who advised as to the sale of the stocks and bonds, instead of the road. He and his partner were both members of the board of directors; and Mr. Haw-

thorn had participated in the negotiations carried on by plaintiff.

[1, 2] The evidence very clearly shows that Mr. Boehme, the purchaser of the railroad, on arriving in Alexandria, went to the office of the plaintiff company and there met I. D. White, the manager of the railroad company, and a director of the Kent Company, and that the sale of the railroad company, or the stocks and bonds of said company, were sold by the Kent Company to said Boehme. It is also clear that the Kent Company accomplished its desire to sell the railroad through the instrumentalities of plaintiff, and that it benefited thereby. It is true that the Kent Company did not, by action of the board of directors, employ the plaintiff for the purpose of selling the railroad owned by it. But it clearly ratified the acts of one of the members of its board, I. D. White, in employing the plaintiff firm for the purpose of selling the railroad, when it passed a resolution authorizing said White and its attorney to enter into a contract of sale for said property, and the property was sold to the purchaser presented by plaintiff.

The Supreme Court of the United States, referring to the matter of irregular corporate actions, have said:

"Courts do not look at such transactions with the microscopic eyes of a special demurrer. * * * The transaction, like all others, was made known to the trustees individually, and they never objected. This intelligent acquiescence was a binding ratification." Creswell v. Lanahan, 101 U. S. 352, 25 L. Ed. 853; Taylor v. Martin, 109 La. 137, 33 South. 112; Lewis v. Manson, 132 La. 817, 61 South. 835.

And again:

"When a contract is made by any agent of a corporation in its behalf, and for a purpose authorized by its charter, and the corporation receives the benefit of the contract, without objection, it may be presumed to have authorized or ratified the contract of its agent." Railway Co. v. Keokuk & Hamilton Bridge Co., 131 U. S. 371, 9 Sup. Ct. 773, 33 L. Ed. 157.

And this court have said:

"There is no principle better settled than that he for whom a contract has been made, subject to his ratification, is presumed to ratify it, unless he immediately, on being informed thereof, repudiates it." Lartigue v. Peet et al., 5 Rob. 92.

Plaintiff has unquestionably rendered valuable services to the defendant the Kent Company under an agreement, made in advance, that he should be compensated therefor. As was said in Crusel v. Houssiere-Latreille Oil Co., 122 La. 913, 48 South. 322:

"We are of opinion that the obligation was authorized in the beginning," although the amount of commissions was not authoritatively fixed at that time, "that it was ratified by the corporation in the receipt and enjoyment by it [the Kent Company] of the consideration therefor, and that the attempted repudiation for want of authority in the agent is ineffectual."

Plaintiff was the procuring cause of the sale of defendant's property, and it is entitled to commissions as a broker, and to recover on a quantum meruit.

The evidence further shows that a commission of 5 per cent. is the usual one allowed for such sale, and the judgment allowing the same will be affirmed, as will also be the judgment in favor of the Railways Company, I. D. White, and Dr. J. A. White.

Judgment affirmed.