## SMITH v. STANDARD INDUSTRIAL LIFE INS. CO. OF LOUISIANA, INC.

(April 15, 1929. Opinion and Decree.)

H. Kenner, of New Orleans, attorney for plaintiff, appellee.

Roger Meunier, of New Orleans, attorney for defendant, appellant.

JONES, J. Plaintiff, alleging a written contract of employment and discharge without just cause, sues for $1,400.00, his salary for the unexpired term. He attaches to his petition the following document:

"Standard Industrial Life Insurance Co., Inc.,
"New Orleans, La.,
"September 27th, 1924.

"This is to certify that the Standard Industrial Life Insurance Company of Louisiana, doth agree to pay to J. H. Smith, the sum of ($25.00) Twenty Five Dollars per week for the period of Thirty-six Months (36) as General Agent and S. Special Writer for the Above said Company.

"Standard Industrial Insurance Co.
"Per S. Sazon,
"Vice-President."

After its exception of no cause of action had been overruled, defendant answered, urging the following defenses:

The document relied upon by plaintiff as evidencing a contract does not in law show the existence of a contract.

If the document does evidence a contract, then the vice-president of the company who signed it had no authority to make such a contract for the company.

If the court finds that a contract did exist, then the company, in the words of the Code, had "serious ground of complaint" against the plaintiff when it discharged him.

The district judge decided in favor of plaintiff for the amount claimed. Defendant has appealed to this court.

The evidence shows that plaintiff, who stood well with the general manager, had been successfully employed for some time by the Liberty Industrial Life Insurance Company, and that he went to work for defendant under the document above quoted, shortly after defendant was organized, and that he worked continuously for it, with apparent satisfaction to all parties, until July 26, 1926, when he was discharged; the contract of employment was made by the vice-president and general manager, Sazon, who also employed the other agents; the existence of this contract was called to the attention of the board of directors and officers at least twice during the twenty-two months of plaintiff's employment, but they took no steps to repudiate the contract.

On this last point we adopt the language of the trial judge, who said:

"The proof is, the General Manager made the contract and the General Manager employed everybody that was employed by the corporation.

"The corporation took advantage of that employment from the day of its organization to this day, and it is, therefore, plain, under the authorities, where a corporation holds out one of its officers, or a general manager, to have the power and cause him to exercise those powers, and it takes the benefit and advantages of this exercise of power, it is estopped to deny the authority of its officers and that is the case here."

See the following authorities: Corpus Juris (Corporations), Vol. 14, Sec. 2228; Sun Printing & Pub. Assn. vs. Moore, 183 U. S. 642, 22 S. Ct. 240, 46 L. Ed. 366; Pace & Company vs. Alexandria Electric Rys. Co., 138 La. 879, 70 So. 867; Savage

vs. Wyatt Lumber Co., 134 La. 627, 64 So. 491; Penick & Ford vs. C. Lagarde Co., 146 La. 511, 83 So. 787; Dupont de Nemours & Co. vs. Capital City Oil Co., 146 La. 720, 84 So. 31; Clark vs. Opelousas, 147 La. 1, 84 So. 433; Kraemer vs. Dixie Laundry Co., 8 Orleans App. 284; Gosserand vs. City of Gretna, No. 11,655 of the Court of Appeal, Par. of Orleans (not yet officially reported) 121 So. 208.

As the general manager testified that plaintiff, who had up to that time been courteous and respectful, could have continued with defendant, if he had not threatened him with bodily harm on July 24th, the validity of the third defense hinges upon the proof of that charge.

All the witnesses agree that the general manager and plaintiff had an altercation at a meeting of the superintendents on July 24th, and that plaintiff left the meeting, saying substantially, to the general manager: "You won't repeat those words to me on the outside."

The general manager says that plaintiff had a revolver in his lower vest pocket which looked like an automatic, and he threateningly put his hand on the weapon as he left the room.

Agents Stewart and Robinson, who were present, confirmed general manager Sazon as to the revolver, but they differ as to the words used and other minor details. They also stated that plaintiff had once before spoken of threatening another man with a revolver.

Washington and Netterville, who were present, say they saw no revolver and that they never knew plaintiff to carry one in the ten years they had known him. Jones, secretary of the company, a witness for defendant, who was not present at the meeting, says that he never knew Smith to carry a pistol and had never heard him speak of so doing.

Jenkins, with whom the plaintiff had lived for years, and Dr. Spears, the physician for the life insurance company, with whom plaintiff had worked for some time, also say they had never known plaintiff to carry a pistol, and had never known him to threaten any one.

It seems highly improbable that plaintiff would have carried a revolver in his vest pocket, as such pockets are usually too small for that purpose, and it is certain that a large part of the revolver would have been visible if it had been so carried, and that anyone who had a clear view of the plaintiff at the meeting could have seen it.

Plaintiff, who had a good position for fourteen months more, would hardly have been so foolish as to enter a meeting of his fellow agents carrying a revolver in his vest pocket.

The judge of the trial court found in favor of plaintiff on this issue and a careful analysis of the evidence reveals no error.

For above reasons the judgment is affirmed.