## OLIVER et al. v. HOME SERVICE ICE CO., Inc. *

### No. 5034.

Court of Appeal of Louisiana.
Second Circuit.

June 4, 1935.

Service Ice Company, Inc., and said stock will be issued to said subscribers;

"Now, therefore, the undersigned, each for himself, acknowledges that said stock is issued to him with the express understanding and obligation on his part to purchase from said corporation ice for resale and not to purchase or sell ice from any other person, firm or corporation within the City of Shreveport, Louisiana, for a period of ten years; that undersigned will not at any time purchase or sell ice, except for and in behalf of the Home Service Ice Company, Inc.; and said ice shall be delivered to the undersigned daily and in due course of business at the plant of the corporation, for the sum and price of twenty-five cents per hundred pounds during the six months of the year beginning April 1st, and for the sum and price of twenty cents per hundred pounds for the remaining six months, known as winter months, beginning October 1st each year.

"As a special consideration of this contract, the said corporation agrees that in no event will it raise the price of ice as set forth above, and each of the undersigned on his part agrees to render exclusive service and make exclusive purchases from the corporation, and in no respect during the period of this contract, to deal with any other person, firm or corporation manufacturing or producing ice.

"Any violation of this agreement on the part of any undersigned subscriber shall subject such subscriber to damages, which amount is hereby liquidated and fixed at a sum equaled to his subscription to the capital stock.

"Done and signed in duplicate this 28th day of February, 1930.

"Home Service Ice Company, Inc.,

"By: [Signed] A. W. Deen, President.

"[Signed]

"W. F. Kitchens

"C. O. Oliver

"C. Garrard

"R. L. Pierce."

C. B. Prothro, of Shreveport, for appellants.

Goff & Goff, of Arcadia, for appellee.

TALIAFERRO, Judge.

On the day defendant's articles of incorporation were executed and signed by the several subscribers to its stock, a contract was signed by it, through its president, and the four plaintiffs, incorporators, of which the following, embodied at length in plaintiffs' petition, is a copy:

"Whereas, the undersigned have subscribed to the capital stock of the Home

Plaintiffs at this date were not engaged in the selling and delivery of ice by retail. Defendant was organized to manufacture and sell ice on wholesale basis, and began doing so in May, 1930, following February 28th, date of the contract. Plaintiffs equipped themselves to sell and deliver ice by retail after date of the contract, and actually handled defendant's ice in doing so for nearly

three years. In the early part of the year 1931 Judge J. E. Reynolds and C. A. Tooke acquired a controlling share of defendant's stock, but apparently no friction arose in the selection of its directors and the conduct of its affairs until January, 1934.

On March 1st this suit was filed by plaintiffs, minority stockholders, to have the terms of the contract, above quoted, enforced. They aver that each of them has religiously lived up to the literal requirements of this covenant by exclusively purchasing and selling ice manufactured by defendant. It is charged and proved that defendant, in violation of the plain provisions of the agreement, on or about October 1, 1933, advanced the price of ice sold and delivered to them, 5 cents per hundred pounds, and refused to sell them ice at the price stipulated therein, thereby actively breaching the terms of the contract; that this action on its part was done in bad faith; that they protested the payment of the advance in sale price of the ice purchased by them, and made written demand on defendant to comply with the contract in this respect, but it refused to do so. They additionally allege that, since the price of ice sold them had been raised, they had purchased 300 tons from defendant and were forced to pay $300 more for it than they were obliged to pay under the agreement. They sue for recovery of this amount. They aver their desire, willingness, and ability to live up to and carry out the contract as written for the remaining six years of its life, and sue for specific performance of its terms.

Defendant excepted to the petition on the ground that it did not disclose a right or cause of action for the following, among other, reasons:

"4th. The alleged contract herein sued on is a unilateral contract and attempts to bind the defendant to deliver ice without binding the plaintiff to continue in business and to buy ice from the defendant for any length of time or for any named amount.

"5th. The alleged contract contains a potestative condition and seeks to permit the plaintiff to buy any quantity of ice it may see fit and at the same time to permit the plaintiff to go out of business or take no ice whatever, if it sees fit to do so."

This exception was overruled. Reserving the benefits of the exception, defendant answered. The answer is a specific denial of practically all of the allegations of fact set forth in plaintiffs' petition. It is specifically averred that the contract sued on was not binding on defendant because executed by its president before its corporate existence actually arose, before it legally had the right to contract, and therefore is without effect as to it. Further pleading, defendant says: "In the alternative and only in case the court should hold that the document sued on and described in Paragraph 3 of plaintiffs' petition was executed with corporate authority and was within the scope and capacity of the corporation and in that event only, the defendant with respect shows that the said contract is null and void for want of a valid consideration, contains the potestative condition and is a nudum pactum."

It is further averred, in the alternative, that plaintiffs C. O. Oliver, W. F. Kitchens, and R. L. Pierce on numerous occasions actively violated the terms of the contract they sue upon by purchasing ice for resale from other persons, firms, and corporations of the city of Shreveport, and that by reason thereof they each have incurred the penalty of stipulated damages embodied in said contract in amount coextensive with the amount of stock issued to and paid for by them, viz., C. O. Oliver and W. F. Kitchens each $1,000, and Pierce, $700. Judgment is prayed for against these plaintiffs for said amounts. It is additionally alleged that Pierce owes defendant $215.52 on ice account. Judgment against him for this amount is prayed for.

The exception of no cause and no right of action was passed on by one division of the lower court, while the case on its merits was tried and disposed of by another division. Plaintiffs' demands were rejected on the ground that the contract alleged upon was a nudum pactum. Tersely stated, the court held that, while the contract did not obligate plaintiffs to purchase any definite quantity of ice from defendant, it did unequivocally bind defendant to sell them ice at fixed prices for a long period of time.

Plaintiffs appealed from dismissal of their suit.

The exception was properly overruled. It is without merit. Our reasons for so holding will appear at length from the reasons hereinafter assigned to sustain the conclusion reached by us that the judgment of the lower court on the merits of the case is erroneous.

The defenses urged are these, viz.:

(1) That said contract was null and void ab initio, and remains so, because of lack of valid consideration, contains a potestative condition, and is a nudum pactum.

(2) That the contract sued on was never binding on defendant because signed by its

president before its corporate existence arose, and before it had complied with the statutory requirements precedent to its right to transact business as a corporate entity.

(3) That plaintiffs Oliver, Kitchens, and Pierce had actively violated the contract in the respects above mentioned.

We shall consider these defenses in inverse order.

Plaintiff Garrard is not charged with having violated the contract in any respect. The testimony introduced to prove violations thereof by the other three plaintiffs is not at all convincing. They each stoutly deny that they purchased any ice for resale in the city of Shreveport since signing the contract from any one besides defendant, save and except the times they were requested to do so by defendant's officers, while its plant was not operating, or at times it was not able to keep them supplied because of breakdowns or temporary cessation of manufacture for other causes. We are impressed with plaintiffs' utter good faith on this issue. They have not willfully violated the contract.

The contract was signed at the same time defendant's articles of incorporation were signed by all of the subscribers to its stock, excepting Pierce. He subsequently signed the contract. The contract was not formally authorized on the part of the corporation by adoption of resolution by its board of directors, but was by common consent of all the incorporators agreed to. In fact, it was in a manner a concomitant of the organization of the corporation itself. Blocks of its stock were subscribed by and sold to plaintiffs solely on account of the execution of the contract. All concerned had knowledge of the contract's existence and all lived up to its terms until about October 1, 1933, nearly four years after it was signed, and nearly three years after the management of the company passed from its original incorporators into the hands of the late Judge J. E. Reynolds and Mr. C. A. Tooke, through acquisition of a controlling number of its shares of stock by them. The testimony leaves no doubt in our minds that Mr. Tooke, president and manager of defendant, knew of the existence of this contract. He endeavored to get another stockholder and retailer of the company's ice to sign the contract during the summer of 1932. The record does not positively disclose actual knowledge of the contract by Judge Reynolds. He was living when the suit was tried, but did not testify in the case.

In view of this state of facts, and upon same as a basis, plaintiffs filed a plea of estoppel against defendant's attempt to have the contract declared ineffective as to it, in the following language, viz.: "That, therefore, after having recognized said contract and having carried its terms, conditions, and stipulations into effect since its execution and having accepted the benefits derived therefrom defendant is estopped from pleading its invalidity, which estoppel is now especially pleaded in bar of the defense that said contract is null and void because it was executed prior to the filing of the Articles of Incorporation with the Recorder of Mortgages of Caddo Parish, Louisiana."

While it is true that section 9 of Act No. 250 of 1928 (General Corporation Act) provides that a corporation formed thereunder shall not incur any debt or begin the transaction of any business until the articles of incorporation or an original multiple thereof have been filed for record in the office of the recorder of mortgages, and the required amount of its capital stock has been paid in, yet, if these provisions are contravened by such corporation, or its stockholders or directors, such acts so done are not stricken with absolute nullity. Paragraph 2 of this section, to the contrary, provides a penalty against the corporation and those of its officers and directors who participate in such premature transactions, but does not declare them null and void; but, even if it did so, the present contract would not be affected thereby because no effort was made to put it into effect until defendant was in a position to deliver ice to plaintiffs, which was over two months after it was signed, and long after the requirements of the law above referred to had been complied with and defendant's corporate existence consummated.

Whatever else may be said of the contract's status, it can certainly be said that defendant is in no position to repudiate it; having recognized it for nearly four years, accepting benefits flowing from its execution by plaintiffs, and by the strongest sort of implications leading them to believe that its binding character was fully accepted by it, defendant is clearly estopped to challenge its validity or deny that it is bound by its terms. This principle is well established in the jurisprudence of all, or nearly all, the states. Thompson on Corporations (3d Ed.) p. 698, § 2071; Marshall on Corporations, § 362.

The following cases support this well-recognized principle: J. D. Pace & Co. v. Alexandria Elec. Rys. Co., 138 La. 879, 70 So. 867; City Savings Bank & Tr. Co. v. Shreveport Brick Co., 172 La. 471, 134 So. 397; Smith v. Standard Industrial Life Ins. Co. of La., 10 La. App. 729, 121 So. 780.

The lower court predicated its opinion upon the doctrine enunciated in the following cases: United Carbon Co. v. Interstate Nat. Gas Co., 176 La. 929, 147 So. 37; Nabors Oil Co. v. Samuels, 170 La. 57, 127 So. 363; Nelson v. Barber, 143 La. 783, 79 So. 403; and definitely held that this last case was decisive of the issue of nudum pactum raised by defendant. In discussing these cases and applying them to the facts of the case at bar, the learned trial judge was considerably influenced in reaching his conclusions by his own opinion that whether a contract is amenable to the charge of being a nudum pactum, or of containing a potestative condition, is determinable upon conditions as they existed when the contract was entered into, and not as of the time when its terms are sought to be enforced. We are quite certain that this rule is not applicable in a case where originally the contract was amenable to the objections mentioned, but has been in whole, or to a material extent, as was done in the present case, executed by the one, the measure of whose duty at the beginning was not definitely fixed, and in the way and manner clearly contemplated by all parties thereto. Also the court a quo was influenced in its decision to a material extent by the fact that plaintiffs had no established retail ice business when the contract was signed, and therefore there was no possible measure or standard by which the quantity of ice they were obligated to purchase from defendant could be determined. It has been held in particular cases that a promisor may withdraw from a contract containing a potestative condition or a nudum pactum at any time (Campbell v. Lambert & Co., 36 La. Ann. 35, 51 Am. Rep. 1), but there are exceptions to this rule.

A potestative condition is defined by the Civil Code (article 2024) as being "* * * that which makes the execution of the agreement depend on an event which it is in the power of the one or the other of the contracting parties to bring about or to hinder."

Stating it differently, it means lack of mutuality of obligations. The effect of the condition is expressed in article 2034 of the Civil Code: "Every obligation is null, that has been contracted, on a potestative condition, on the part of him who binds himself."

A contract founded upon a potestative condition may have a legal or valid consideration, yet be amenable to attack seasonably because of such condition. In the present case there was a definitely expressed special consideration, viz., the privilege extended to plaintiffs to purchase stock in the new corporation.

A "nude pact" is one without a consideration. To illustrate: "A delay, without sufficient consideration or new security, being a nudum pactum, will not discharge other parties." Huie v. Bailey, 16 La. 213, 35 Am. Dec. 214.

It has been defined as being "an executory contract without a consideration, * * * a naked promise." 5 Words & Phrases, First Series, p. 4855.

The contract involved herein is not a nudum pactum.

By referring to said contract it will readily be observed that plaintiffs agreed to do, and not to do, certain things, viz.: (1) To purchase from defendant ice for resale for a period of ten years; (2) not to purchase or sell, during said period, ice from any other person, firm, or corporation in the city of Shreveport. They each gave up a valuable right in return for defendant's obligation to them. Defendant definitely agreed to deliver ice daily to plaintiffs (evidently to the full extent of their needs and demands) at its plant for said period for 20 cents per hundred for the six months beginning April 1st, and for 25 cents per hundred for the other six months of each year. The only hiatus in the contract, affecting the mutuality of obligations, lies in the fact that plaintiffs did not definitely and expressly bind themselves to purchase daily any specific quantity of ice. It was contemplated, obviously, that plaintiffs would use their best efforts to build up a large retail ice business, which they did, and under the contract they were bound to purchase from defendant all the ice necessary to meet the demands of their respective customers. The quantity of ice they were bound to purchase from defendant was limited only by the combined demands of their own patrons. Therefore the fact that plaintiffs had no established business when the contract was signed has lost its importance as a material factor in the case. Before the binding character of the agreement as regards them was assailed, they did build up a trade and did establish

themselves in the business of reselling the ice they were purchasing from defendant; and, granting arguendo that the agreement, when signed, was vulnerable to attack because it contained a potestative condition as respects plaintiffs, it has ceased to be so, since the uncertainty of its provisions, in the respect discussed, has been made certain by plaintiffs' execution of it in the manner manifestly intended by all concerned.

"Every condition must be performed in the manner that it is probable that the parties wished and intended that it should be." Civ. Code, art. 2037; Adeline Sugar Factory Co. v. Evangeline Oil Co., 121 La. 961, 46 So. 935.

It might be said that, even though plaintiffs have now an established business in the retailing of ice, there is nothing in the contract to prevent them from abandoning such business, or of purposely allowing it to decline to such extent that purchases by them would become negligible. The penal clause in the contract is a guaranty against such action on their part. It was incorporated in the contract to vouchsafe performance on part of plaintiffs of their duties thereunder. This clause protects defendant amply against willful breach of the contract by plaintiffs.

We think the case of Owens v. Muslow, 166 La. 423, 117 So. 449, decisive of the question we have been discussing. In that case the court considered and applied the provisions of articles 2024 and 2034 to the facts found by it. There the plaintiff had paid defendant a large sum of money on an option agreement wherein defendant agreed to sell to plaintiff certain oil properties for over one million dollars, "provided that plaintiff should furnish defendant, on or before January 15, 1920, security or guaranty satisfactory to defendant" for the payment to him of the balance due on the contract. Plaintiff abandoned the contract, and, after the lapse of nearly five years, sued to recover back the option money paid by him on the ground that, inasmuch as the sufficiency of the guaranty or security he was to provide was left to the will of defendant, the contract was void as a whole as containing a potestative condition. The syllabus of the case reflects the court's decision of the non-applicability of said articles to an executed contract, or to one executed to a substantial extent, which originally was subject to the evils of the potestative condition:

"A so-called contract, which leaves one of parties free to perform or not at his mere will or pleasure, is no contract at all, but is capable of ripening into contract if party not bound performs his part thereof.

"Civ. Code, art. 2034, providing that every obligation is null that has been contracted on 'potestative condition,' defined by article 2024, on part of him who binds himself, means that such an obligation is voidable if nullity be set up seasonably."

13 Corpus Juris, 334, 335, lays down the rule generally to be:

"But where the contract does not contain a binding promise on either side, one party cannot bind the other by tendering performance."

"Although there is a lack of mutuality, in the beginning, this may be cured by the other party subsequently binding himself also by promise or act. Thus if A promises B to pay him a sum of money if he will do a particular act or make a particular promise, and B does the act, the promise thereupon becomes binding, although B at the time of the promise does not engage to do the act or to make the promise."

He who would take advantage of the lack of mutuality in what is intended to be a commutative contract is obliged to do so seasonably; it is too late if he delays until the other party has executed it.

What we have said, supra, is predicated upon the admission arguendo that the contract was originally null and void, as to defendant, because founded on a potestative condition. However, all contracts founded on a potestative condition are not necessarily ab initio null and void. Referring to article 2034 of the Civil Code, quoted supra, article 2035 says: "The last preceding article is limited to potestative conditions, which make the obligation depend solely on the exercise of the obligor's will; but if the condition be, that the obligor shall do or not do a certain act, although the doing or not doing of the act depends on the will of the obligor, yet the obligation depending on such condition, is not void."

Applying this law to the contract in question, we find that plaintiffs agreed to do, and not to do, certain things. What they agreed not to do is definitely disclosed; what they bound themselves to do, in a sense, is indefinite, on the face of the contract. To clear up this indefiniteness "depended on the will of the obligors." They did so in no unmistakable manner. We think this article means, as regards the obligation to do, that it is voidable; not absolutely void. It lay

within the power of the obligors (plaintiffs) to destroy the potestative character of the agreement by such action on their part as was contemplated by the contract. They have done this. Had they not done so, if they had remained inactive, of course, the effect of the condition would have been that the contract as a whole would have become null and void.

It is not denied that, since defendant raised the price on ice sold plaintiffs, 5 cents per hundred pounds, they purchased the following quantities from it, viz.:

C. O. Oliver.........................105 tons.
W. F. Kitchens..................... 85 tons.
O. Garrard...................... 75 tons.
R. L. Pierce...................... 35 tons.

The increase in price on these sales amounts to $300. They are entitled to judgment for said amount, their interest to be in proportion to the above-named quantities of ice purchased.

It is disclosed that Pierce is due defendant on ice account $215.52. No objection was made to defendant engrafting demand therefor in its answer. It is entitled to judgment for said amount.

Plaintiffs prayed for mandatory writ of injunction "ordering, directing and commanding the Home Service Ice Company, Incorporated to abide by the terms of its contract with plaintiffs." We think they are entitled to such equitable relief under article 1929 of the Civil Code, which provides:

"If the obligation be not to do, the obligee may also demand that the obligor be restrained from doing anything in contravention of it, in cases where he proves an attempt to do the act covenanted against." Black v. Good Intent Towboat Co., 31 La. Ann. 497; Levine v. Michel, 35 La. Ann. 1121; Algiers Ry. & Lighting Co. v. New Orleans Ry. & Light Co., 137 La. 579, 68 So. 960.

For the reasons herein assigned, the judgment appealed from is annulled, avoided, and set aside; and it is now ordered, adjudged, and decreed that plaintiffs do have and recover judgment against defendant recognizing the validity and binding character of the contract sued on as to all parties thereto; that plaintiffs have and recover judgment, in the proportions herein mentioned, against defendant for $300, with 5 per cent. per annum interest from judicial demand until paid.

It is further ordered that a writ of mandatory injunction issue herein ordering, directing, and commanding defendant to abide by the terms of the contract sued on, and specifically ordering and commanding it not to increase the price of ice sold to plaintiffs beyond that fixed in said contract.

It is further ordered, adjudged, and decreed that defendant have and recover judgment against R. L. Pierce, plaintiff herein, for $215.52, with 5 per cent. per annum interest from judicial demand in this suit.

It is further and finally ordered, adjudged, and decreed that plaintiffs' right to recover back from defendant all amounts paid by them for ice in excess of the stipulated contract price, excepting that for which judgment is herein rendered, be, and same is hereby, reserved to them; and that defendant pay all costs of both courts.