760 So.2d 451 (2000)
William J. VOITIER
v.
CHURCH POINT WHOLESALE BEVERAGE CO., INC., et al.
No. 99-1777.
Court of Appeal of Louisiana, Third Circuit.
April 5, 2000.
Rehearing Denied May 24, 2000.
*453 J. Lee Wimberley, Jr., Vidrine and Wimberley, Church Point, LA, Mack E. Barham, Robert E. Arceneaux, Gail N. Wise, Barham & Arceneaux, New Orleans, LA, Counsel for Defendants/Appellants, Church Point Wholesale Co., Inc. and Monroe Wholesale Beverage Co., Inc.
William W. Stagg, Durio, McGoffin & Stagg, Lafayette, LA, Counsel for Plaintiff/Appellee, William J. Voitier.
(Court composed of Judge ULYSSES GENE THIBODEAUX, Judge OSWALD A. DECUIR and Judge ELIZABETH A. PICKETT).
THIBODEAUX, Judge.
William Voitier brought suit against his former employers, Church Point Wholesale Beverage Co., Inc. (hereinafter "Church Point") and Monroe Wholesale Beverage Co., Inc. (hereinafter "Monroe"), alleging wrongful termination under the terms of his employment contracts. The district court ruled in Mr. Voitier's favor, finding that his termination was not for *454 cause as defined under the employment contract and awarded damages. We affirm the wrongful termination finding but reverse in part and amend in part the trial court's assessment of damages.

I.

ISSUES
Church Point and Monroe present the following issues for review:
(1) whether the district court erred in holding that Mr. Voitier's termination was without cause:
(A) whether Mr. Voitier's employment by Baton Rouge Wholesale Beverage Co., Inc. (hereinafter "Baton Rouge") violated exclusivity provisions providing cause for terminating his employment contracts;
(B) whether Mr. Voitier's failure to disclose the full extent of his involvement with and duties for Baton Rouge constitute cause for terminating his employment contracts;
(C) whether the unauthorized loans to Baton Rouge constitute cause for terminating Mr. Voitier's employment contracts; and,
(D) whether the manipulation of corporate financial records constitutes fraud providing cause to terminate the employment contracts.
(2) whether the district court erred in determining that Mr. Voitier proved his entitlement to certain fringe benefits;
(3) whether the district court erred in awarding attorney's fees of $60,000; and,
(4) whether the district court erred in determining that the writ of attachment was properly issued.

II.

FACTS
P. Roy Horecky incorporated three businesses in the 1960's, Church Point, Monroe and Baton Rouge Wholesale Beverage Co., Inc. All three corporations were engaged in the distribution of alcoholic beverages but for different territories. Church Point and Monroe have identical articles, by-laws and memberships. All shareholders are descendants of the founder. Baton Rouge is now solely owned by the Voitier branch of the family.
For approximately thirty years, all three corporations were managed by Robert Voitier, William Voitier's father. During this time, the shareholders wholly entrusted the management of the corporations to Mr. Voitier. No shareholder meetings were held nor did the corporations elect or appoint new members to their boards of directors.
William Voitier worked with his father in the management of the corporations. In 1982, he was named assistant general manager of Church Point and Monroe and Vice President of Baton Rouge. Upon his father's death in 1992, he assumed his father's duties as manager of the three corporations.
Mr. Voitier was informed by a shareholder, Charles Daigle, that the shareholders were interested in becoming more involved in running the corporations. Concerned that he would be discharged from his position as manager, Mr. Voitier solicited the remaining members of the original boards to secure his employment. Upon his request and the advice of their attorney, Paulina Arceneaux Harmon and Louis Arceneaux, the surviving members of the original boards of directors of Church Point and Monroe, held a special meeting on June 1, 1992 and appointed Julia Jacobs and Donald Hebert as new directors. On June 8, 1992, the reconstituted boards passed resolutions authorizing Louis Arceneaux to execute employment agreements with William Voitier. *455 Accordingly, Mr. Voitier executed employment contracts to serve as general manager of both corporations. The employment contracts were practically identical.
Pursuant to the contracts, Mr. Voitier was to receive an annual salary of $30,000 plus commissions graded up to twenty percent of the corporations' year-end net profits. The contracts provided for a term of two years with automatic renewal for two additional successive two year terms. Anticipating that new boards of directors would soon be elected and that the new boards would not renew his contracts, Mr. Voitier asked the boards to extend his contracts for two additional terms. On January 13, 1994, the contracts were amended to allow for a maximum term of ten years (or two additional renewals).
Entirely new boards of directors were elected in March 1994. Some evidence was presented that these boards desired to sell Church Point, but perceived the employment contract with Mr. Voitier as an unattractive liability to potential purchasers. Shortly after it was reconstituted, the Church Point board filed suit seeking a declaratory judgment that the contracts were invalid and unenforceable because they were executed without proper authorization and/or in violation of Mr. Voitier's fiduciary obligation to the corporations or were unfair to the corporations. This Court ruled that the contracts were executed with the proper authorization and were enforceable. See Church Point Wholesale Beverage Co., Inc. v. Voitier, 97-650 (La.App. 3 Cir. 1/14/98); 706 So.2d 1015, writ denied, 98-379 (La.4/9/98); 717 So.2d 1145.
As the suit on the validity of the contracts progressed through the courts, the Church Point and Monroe boards placed Mr. Voitier on administrative leave and asked him to make a written disclosure of his employment with Baton Rouge. On December 5, 1996, Mr. Voitier provided written notice to the boards that he worked in essentially the same capacity for Baton Rouge as he did for Monroe and Church Point. On December 19, 1996, the Church Point and Monroe boards voted to terminate Mr. Voitier's employment with both companies. In a letter of December 26, 1996, the boards notified Mr. Voitier that his employment with Church Point and Baton Rouge was terminated due to his employment with Baton Rouge, concealing this employment, interfering with the board's attempts to gain information about company operations and attempting to prevent the shareholders from selling corporate assets.
Church Point and Monroe made further inquiry into Mr. Voitier's management after his termination. Their investigation revealed that he had made two interest-free $100,000 loans from their accounts to Baton Rouge without board authorization. It appeared that Mr. Voitier had concealed those loans by manipulating the corporations' financial records.
On February 5, 1997, Mr. Voitier filed suit against Church Point and Monroe seeking damages for wrongful termination and breach of contract. He sought a writ of attachment in order to seize $370,627.74, the proceeds of the sale of Church Point to Quality Brands. Church Point and Monroe answered the petition, alleging that Mr. Voitier was terminated for cause, noting the grounds set forth in the letter of December 26, 1996, e.g., violation of the exclusivity provisions, making unauthorized, unsecured, interest-free loans and for fraudulently concealing them. Church Point and Monroe reconvened against Mr. Voitier seeking damages for wrongful attachment and reimbursement of amounts paid by them in excess of Mr. Voitier's contractual salary.
The district court found that Mr. Voitier's termination was without cause as defined under his employment contracts and, thus, his termination was wrongful. The court also found that Mr. Voitier was required to return amounts paid in excess of his salary and denied his claim for penalty wages. The court awarded Mr. Voitier *456 attorney fees and found the wrongful attachment issue moot because the parties had agreed that the funds should be deposited into an escrow account.

III.

LAW AND DISCUSSION

Standard of Review
A person may hire out his services for a limited time or for the performance of a certain enterprise. La.Civ. Code art. 2746. Under Louisiana law, employment agreements are a species of lease. "Lease or hire is a synallagmatic contract, to which consent alone is sufficient, and by which one party gives to the other the enjoyment of a thing, or his labor, at a fixed price." La.Civ.Code art. 2669 (emphasis in original); Adams v. Franchise Finance Corp. of America, 96-855 (La.App. 3 Cir. 2/5/97); 689 So.2d 572, writ denied, 97-604 (La.4/18/97); 692 So.2d 456. Contracts have the effect of law between the parties and may only be dissolved through the consent of the parties or on grounds provided by law. La. Civ.Code art.1983. Parties are obliged to perform contractual obligations in good faith. Id. Contracts are interpreted according to the common intent of the parties. La.Civ.Code art.2045. Courts are bound to venerate the clear and explicit language of contracts without further inquiry into the parties' intent when doing so does not lead to absurd consequences. La. Civ.Code art.2046; Amend v. McCabe, 95-316 (La.12/1/95); 664 So.2d 1183. "Whether the words of a contract are `clear and explicit' or ambiguous is a question of law." Hebert v. Insurance Center, Inc., 97-298, p. 5 (La.App. 3 Cir. 1/7/98); 706 So.2d 1007, 1011, writ denied, 98-353 (La.3/27/98); 716 So.2d 888. Appellate courts apply the following standard of review when interpreting contracts:
Where factual findings are pertinent to the interpretation of a contract, those factual findings are not to be disturbed unless manifest error is shown. However, when appellate review is not premised upon any factual findings made at the trial level, but is, instead, based upon an independent review and examination of the contract on its face, the manifest error rule does not apply. In such cases, appellate review of questions of law is simply whether the trial court was legally correct or legally incorrect.
Evangeline Parish Sch. Bd. v. Energy Contracting Svcs. Inc., 617 So.2d 1259, 1265 (La.App. 3 Cir.), writ denied, 624 So.2d 1228 (La.1993) (quoting Borden, Inc. v. Gulf States Utilities Co., 543 So.2d 924, 928 (La.App. 1 Cir.), writ denied, 545 So.2d 1041 (La.1989)).

Cause for Termination
Church Point and Monroe first contend that the trial court erred in finding that Mr. Voitier's employment was terminated without cause as defined in his employment contracts. Particularly, they assert that certain actions by Mr. Voitier constitute "causes" for termination under the contracts: (1) his employment with Baton Rouge was a breach of the contracts' exclusivity provisions; (2) his failure to follow and implement policies and directives of the boards of directors by neglecting to disclose his employment with Baton Rouge; (3) by making interest-free loans from Church Point and Monroe to Baton Rouge, Mr. Voitier breached his fiduciary duties to the corporations; and, (4) his attempt to manipulate the financial records of the corporations to conceal the loans constitutes fraud.
Mr. Voitier responds that the trial court's judgment was not manifestly erroneous. In support of this position, he argues that all three corporations were not only aware of but also condoned his employment in the management of the others and that the loans between the corporations were within prudent business practices customary among closely held family corporations and did not constitute fraud.

*457 Exclusivity of Employment
We first consider whether Mr. Voitier's relationship with Baton Rouge breached any exclusivity provisions in his contracts with Church Point and Monroe. Relevant to exclusivity of employment, the employment contracts provided:
Employee shall serve Employer in the capacity of General Manager, with such obligations, responsibilities and prerogatives with respect to Employer's business as are more fully set forth in Section 4 of this Agreement. During all Terms, Employee will faithfully, diligently and competently perform his duties hereunder on a full-time basis exclusively for the benefit of the employer and subject to the direction and control of the Employer's board of directors.
A corporate manager is an agent of the corporation and is obligated to perform his duties in the manner prescribed by the by-laws or the board. La.R.S. 12:82(D). Like officers and directors, managers of corporations stand in a fiduciary relation to the corporation and its shareholders and are expected to discharge their duties in good faith with the diligence, care, prudence and skill of ordinary, prudent men under similar circumstances in like positions. Cf. La.R.S. 12:91. Notwithstanding the general principle that managementlevel employees owe their employers a duty of loyalty and fidelity, courts will excuse certain breaches where it is shown that the employers ratified the employee's unauthorized acts. See ODECO Oil & Gas Co. v. Nunez, 532 So.2d 453 (La.App. 1 Cir.1988), writ denied, 535 So.2d 745 (La.1989).
Ratification is explained in La.Civ.Code art. 1843:
Ratification is a declaration whereby a person gives his consent to an obligation incurred on his behalf by another without authority.
An express act of ratification must evidence the intention to be bound by the ratified obligation.
Tacit ratification results when a person, with knowledge of an obligation incurred on his behalf by another, accepts the benefit of that obligation.
The evidence shows that the boards of directors were aware of Mr. Voitier's substantial involvement with Baton Rouge at the time the employment agreements were executed. Moreover, the agreements were amended to protect the symbiotic relationship that then existed among the corporations. Although the contracts provided for exclusivity in employment, each corporation was aware of Mr. Voitier's connection with the others.
It is well-established that such intelligent acquiescence operates as a binding ratification and, consequently, serves as an insurmountable impediment to an employer's pursuit of judicial redress for the ratified actions of its employee. See J.D. Pace & Co. v. Alexandria Electric Rys. Co., 70 So. 867, 138 La. 879 (1916).
Given these facts, we wholly agree with the trial court's conclusion that the Church Point and Monroe boards were aware of Mr. Voitier's affiliation with Baton Rouge and that the election of new officers does not alter the corporations' knowledge prior to the election. Church Point and Monroe are barred from vitiating the employment agreements based on conduct they condoned. Because we find that the corporations were aware of Mr. Voitier's multiple affiliations, it is unnecessary to consider whether he improperly failed to disclose his employment with Baton Rouge.

Loans
Church Point and Monroe next argue that Mr. Voitier breached his fiduciary duty to them by making unsecured, interest-free loans from their accounts to Baton Rouge. Mr. Voitier responds that the loans were within customary business *458 practices of the corporations and, thus, not a breach of his fiduciary duty.
Under the employment agreement, "Fraud, Misappropriation and embezzlement" are among the enumerated causes for Mr. Voitier's termination. This Court has previously held that by misappropriating funds from his employer, an employee breaches his fiduciary duty owed to the employer sufficient to warrant termination of his employment contract. See Sim v. Beauregard Elec. Co-op., Inc., 322 So.2d 410 (La.App. 3 Cir.1975). Although we agree that the misappropriation of funds by an employee may provide cause for terminating employment, it does not provide cause for termination under the circumstances of this case.
The Louisiana Civil Code explains that "cause" is synonymous with "reason." La.Civ.Code art. 1967 cmt. (a). By extrapolation then, Church Point and Monroe are asking us to determine that misappropriation of funds was the reason they terminated Mr. Voitier's employment. We cannot. For improper conduct by an employee to provide the reason or basis for his termination, the employer must have been aware of the improper conduct at the moment of termination. Here, although misappropriation could be a reason for termination, it was not one of the reasons because Church Point and Monroe were unaware of the loans at the time they terminated Mr. Voitier. They only became apprised of the loans during their post-termination investigation into Mr. Voitier's management which was too late to provide cause, retroactively, for the prior termination.

Fraud
In a similar argument, Church Point and Monroe contend that Mr. Voitier committed fraud by manipulating the corporations' financial records to conceal the unauthorized, unsecured, interest-free loans and that this fraud was cause for terminating the employment contracts.
"Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." La.Civ. Code art. 1953. Intent to defraud and loss or strong probability of loss are essential elements of legal fraud. McPhail v. Louisiana Farm Bureau Rice, Inc., 419 So.2d 977 (La.App. 3 Cir.), writ denied, 421 So.2d 908 (La.1982). The party alleging fraud bears the burden of proving it. Id.
Although not binding here, we note that our sister circuit has held that a corporation had cause to terminate the employment contract of an employee who deliberately concealed the financial condition of the company from the board of directors. See Certified Sec. Systems, Inc. v. Yuspeh, 97-2004 (La.App. 4 Cir. 4/22/98); 713 So.2d 558. Consideration of whether Mr. Voitier's accounting practices constituted fraud is unwarranted here.
Although the deliberate secreting of a corporation's financial activities may constitute fraud sufficient to provide cause to terminate employment, this act could not have been the basis for Mr. Voitier's termination on December 26, 1996 because the boards of directors were unaware of it at that time. Thus, congruent with our reasoning above, the argument that fraud was the cause for Mr. Voitier's termination under the contracts is untenable.

Fringe Benefits
It is urged by Church Point and Monroe that the trial court improperly granted Mr. Voitier certain fringe benefits to which he was not entitled.
This Court has previously held, "Fringe benefits are an item of damages recoverable as a matter of law." Goodwyne v. People's Moss Gin, Inc., 96-1340, p. 10 (La.App. 3 Cir. 4/30/97); 694 So.2d 1101, 1107, writ denied, 97-2041 (La.11/21/97); 703 So.2d 1309. While we cohere with the well established principle that fringe benefits are an indispensable component in calculating a damage award *459 sufficient to provide adequate compensation to an employee whose employment is discontinued due to work-related injury or death, in this case, we are considering the proper damages award for wrongful termination based on two employment agreements made with closely held family corporations. We will analyze each benefit in turn under the facts of this case.
Health Insurance. The appellants argue that Mr. Voitier failed to prove that they provided him with health insurance or even had a health insurance plan in place. In support of their position, they direct us to a portion of Mr. Voitier's testimony in which he admits that although his employment contracts provided that Church Point and Monroe would pay his health insurance, the cost was actually borne by Baton Rouge. That testimony reads as follows:
Q: Mr. Voitier, were you entitled to did you have to pay life insurance premiums while you were an employee of Church Point Wholesale Beverage Company?
A: Not life insurance premiums.
Q: What about health insurance?
A: Health insurance. Baton Rouge Wholesale Beverage Company paid for themy health insurance.
Q: Was it your understanding that your employment contract with Church Point and Monroe required them to pay it?
A: It did, but we just decided to let Baton Rouge go ahead and assume that expense.
We note that Mr. Voitier's contention regarding his health insurance is the exact inverse of his argument concerning exclusivity of employment. In the latter, he argued that although the contracts required exclusivity, the corporations actually permitted multiple employment and, therefore, he should not be found liable for breach. He now urges application of the letter of the contracts instead of the actual practice. It is a non sequitur to ignore the express language of the contract in determining the existence of a breach while simultaneously reverting to that language to establish the amount of damages for breach.
"The Plaintiff is, of course, responsible for shaping the direction of his own case and the strategic decisions involved in presenting the evidence." LeBlanc v. Acadian Ambulance Svc., Inc., 99-271, p. 28 (La.App. 3 Cir. 10/13/99); 746 So.2d 665, 681. Thus, our analysis of Mr. Voitier's entitlement to fringe benefits will be in pari causa with our analysis of whether his termination was wrongful. We will consider the terms of the contract applicable to damages in light of the relationship among the parties, just as we did in our analysis of the exclusivity requirements. Consistent with the premise upon which Mr. Voitier successfully argued that his termination was without cause, he is without right to health insurance benefits he never received under the contracts. Since this expense was the responsibility of Baton Rouge during Mr. Voitier's employment under the contracts, we see no reason to impose this burden on Church Point and Monroe now. Accordingly, we amend the trial court's award to exclude the $38,776.32 award for health insurance.[1]
Pension. Church Point and Monroe argue that the trial court erred in using the four percent rate proposed in the report by Plaintiff's expert, Mr. Anderson Hartiens, a Certified Public Accountant, when calculating the award for loss pension plan contributions. They argue that the rate is unsupported by the evidence.
Our review of the record does not indicate that the calculation was clearly wrong; therefore, we decline to disturb that portion of the award.
*460 Automobile. Church Point and Monroe challenge the awards of $34,544.00 for loss of use and $6,256.00 for insurance of an automobile provided to Mr. Voitier during his employment.[2]
As we previously stated, fringe benefits are a proper element of damages. Edwards v. Daugherty, 97-1542 (La.App. 3 Cir. 3/10/99); 729 So.2d 1112, writs denied, 99-1393 and 99-1431 (La.9/17/99); 747 So.2d 1105. However, unlike pensions, automobiles are lesser fringe benefits that are not integral parts of an employee's compensation package. Andrepont v. Lake Charles Harbor and Terminal Dist., 602 So.2d 704 (La.1992) (citing Blum v. Witco Chemical Corp., 829 F.2d 367 (3rd Cir.1987)). "Fringe benefits vary depending on the industry, the occupation within the industry, and the size of the employer...." American Motorist Ins. Co. v. American Rent-All, Inc., 579 So.2d 429, 436 (La.1991). A court of appeal may properly reduce an award of fringe benefits that compensates a former employee for benefits received in his future employment. See Id.
Mr. Voitier testified that although his employment contracts with Church Point and Monroe each stated that he would be permitted use of a vehicle, he understood the contracts to mean only one vehicle. He further testified that the vehicle was used to conduct business for Church Point, Monroe and Baton Rouge, although Baton Rouge did not contribute to the expense. Later in his testimony, Mr. Voitier admitted that his new employer provided a vehicle for his use. That testimony, with examination by Mr. J. Lee Wimberley, went as follows:
Q: [Mr. Wimberley]: When you were working for Church Point you hadthey furnished a vehicle for your use?
A: [Mr. Voitier]: Yes, it was split between Monroe and Church Point.
Q: And you used it for all three companies?
A: Again, I did.
Q: No reimbursement to Monroe or Church Point?
A: No.
Q: And of course you would use that vehicle for business use, right?
A: Yes.
Q: Okay. Since you have not had employment since January 1st of 1997, then you really didn't need that vehicle for business use, correct?
A: Well, we're charging off the expenses of my current vehicle to our business, yes.
Q: Okay, so you're furnished a vehicle with your business?
A: Yes.
Q: Okay.
A. It's a legitimate expense.
It is clear from this testimony that Church Point and Monroe provided a company car to Mr. Voitier that he used in conducting business for them as well as for Baton Rouge. Once he was relieved of his obligation to perform company duties, he no longer needed a vehicle to aid in this performance. Furthermore, another company with which he is associated has assumed this responsibility. Ergo, it is unnecessary to include the loss of use of the vehicle, $34,544.00, and the automobile insurance, $6,256.00 in the award of damages. The trial court's assessment of damages is reduced by $40,800.00 to exclude these amounts.

Attorney Fees
Upon termination of employment, the employer is obliged to pay the employee the amount due under the terms of the *461 employment. La.R.S. 23:631(A)(1)(a). An employer's liability for attorney fees upon failure to promptly pay wages is addressed in La.R.S. 23:632 which provides, in part:
Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.
The trial court awarded Mr. Voitier attorney fees of $60,000.00. Church Point and Monroe urge this Court to reverse that award because the fees were not proven and they were not given an opportunity to controvert the reasonableness of the fees.
Attorney fees are proper where an employee brings a well-founded suit for payment of wages due. La.R.S. 23:632. A suit is obviously "well-founded" where the employee-plaintiff prevails in both the trial and appellate courts. See Beard v. Summit Institute for Pulmonary Medicine and Rehabilitation, Inc., 97-1784 (La.3/4/98); 707 So.2d 1233.
Where the record fails to disclose the exact amount of time the plaintiffs attorney spent preparing the case, the trial court may fix the amount of attorney's fees based on the record. Winkle v. Advance Products & Systems, Inc., 98-694 (La.App. 3 Cir. 10/28/98); 721 So.2d 983. "An award of attorney fees is based on the services needed to effect recovery, the degree of professional skill and ability exercised, the volume of work performed, the time devoted to the case, the result obtained, the amount in controversy, the novelty and difficulty of the questions involved, and the percentage fixed for attorney fees in plaintiffs contract with his attorney, if based on a contingency." Brown v. Navarre Chevrolet, Inc., 610 So.2d 165, 172 (La.App. 3 Cir.1992), citing Louisiana Rules of Professional Conduct, Rule 1.5. Additionally, the Louisiana Supreme Court has identified several factors to be taken into consideration when determining the reasonableness of attorney's fees: "(1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) the amount of money involved; (5) the extent and character of the work performed; (6) the legal knowledge, attainment, and skill of the attorneys; (7) the number of appearances involved; (8) the intricacies of the facts involved; (9) the diligence and skill of counsel; and (10) the court's own knowledge." Rivet v. State, Dep't of Transp. and Dev., 96-C-145, pp. 11-12 (La.9/5/96); 680 So.2d 1154, 1161.
Our review of the record here leads us to conclude that the trial court properly awarded attorney fees of $60,000 to the Plaintiff. At the very least, we cannot conclude that this award is manifestly wrong or clearly erroneous.

Attachment
We agree with the trial court's ruling that the wrongful attachment issue is moot.

IV.

CONCLUSION
Accordingly, the trial court's judgment that Mr. Voitier was wrongfully terminated is affirmed. We also affirm the trial court's award of damages for salary, commissions and pension. We reverse that part of the judgment which awarded damages for auto use value, auto insurance, and health insurance and reduce the damages award by $79,576.32.
Costs of this appeal are assessed against Church Point Wholesale Beverage Co., Inc. and Monroe Wholesale Beverage Co., Inc.
AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.
NOTES
[1] The trial court awarded $19,388.16 from each defendant corporation based on this formula: 50% of $7,128.00 per year times 5.44 years.
[2] The award for loss of use of an automobile included value of the automobile and insurance. Damages assessed for loss of use was valued for each defendant corporation at $17,272.00 (or 50% of $6,350.00 per year times 5.44 years). The automobile insurance award was assessed to each defendant corporation in the amount of $3,128.00 based on 50% of $1,150.00 per year times 5.44 years.